GREEN et al. v. GREER et al.—198 S. W. (2d) 822.

Middle Section.   June 29, 1946.

Petition for Certiorari denied by Supreme Court, January 11, 1947.

James B. Reagan, of Jamestown, and Joe Brown Cummings and Kenneth Harwell, both of Nashville, for appellants.

Robert F. Turner and Ward R. Case, both of Jamestown, for appellees.

HOWELL, J. Previous to his death on January 2, 1933, John G. Greer of Forbus in Fentress County, Tennessee, executed deeds by which he conveyed real estate owned by him to his wife and children, the deeds to the children having stated the consideration to be $1.00 in cash paid and love and affection and that the conveyance covers and includes the whole and entire share of the conveyee's part of the John G. Greer and Permelia Greer estate. The deed to his wife Permelia Greer was for and during her life and at her death to three of their children and one grandchild. The deeds to the children also contained a provision that the conveyees should pay to John G. Greer one-third of all crops or one-third of all grains and hay produced on the land conveyed each year during the lifetime of the said John G. Greer.

There were seven of these deeds, one to Oakley G. Greer dated December 6, 1932, one to Elmer Greer dated December 6, 1932, one to the wife Permelia Greer for life with remainder to Willard Greer, Walter Greer, Marie Greer Bonneau, and Evelyn Greer Rains, dated December 21, 1932, one to Ruby Ellen Greer West, dated December 21, 1932, one to Cora Greer Upchurch dated December

21, 1932, one to Edna Greer Green, dated December 21, 1932, and one to Pearl Greer Chapman, dated December 21, 1932. John G. Greer had previously transferred some of his land to a daughter, Frona Greer Storie.

Mrs. Permelia Greer survived her husband and died on December 28, 1943.

The deeds mentioned were all properly acknowledged and were handed to the various conveyees, Ruby Greer West died on January 3, 1933, and Cora Greer Upchurch died on January 25, 1937.

On October 11, 1944, two of the daughters, Edna Greer Green and Pearl Greer Chapman, and two sets of grandchildren, minor children of Cora Greer Upchurch and Ruby Greer West, both deceased, filed the bill herein against seven of the children of John G. Greer and Permelia Greer, namely: Oakley G. Greer, Frona Greer Storie, Elmer Greer, Willard Greer, Walter Greer, Marie Greer Bonneau and Evelyn Greer Rains, and against Fred Johnson and James A. Upchurch and Ester Upchurch and in their bill alleged that John G. Greer from December 1, 1932, until the time of his death January 2, 1933, was continually incapacitated and wholly unable to attend to business affairs and therefore not mentally capable of executing the deeds mentioned dividing his real estate among his children. The defendant Fred Johnson was a purchaser of part of the land from some of the children and the defendants James and Ester Upchurch claimed part of the land through a tax deed. The tax deed is not now involved in the appeal. The land in controversy consists of about 160 acres.

The last paragraph of the bill before the prayer, is as follows:

"The complainants charge that at the time John G. Greer, deceased, undertook to make the conveyance of

his real estate which are specified in paragraph II of this bill, he was attempting to make a testamentary disposition of his property hereinbefore described among the persons who were the natural objects of his bounty but that he had not the mental capacity to do so and that the attempted conveyances specified in paragraph II of the bill should be set aside and the real estate described therein, together with the real estate described in the conveyances sought to be cancelled and set aside by this bill, should be partitioned in kind, if feasible, and divided among the heirs at law of John G. Greer, deceased. But in the event the complainants are unsuccessful in obtaining the concellation of the deed specified in subparagraph 1, 2 and 3 of paragraph II of the bill and of the conveyances made thereafter affecting parts of the property and hereinbefore described, they say that the remaining parts of the real estate of John G. Greer, deceased, hereinbefore described should in equity be partitioned among the complainants only.''

It is observed that there is no allegation in the bill that this division of his lands among his children by John G. Greer was not fair and equitable or that any injustice was done any of them, the only apparent reason for the filing of the bill being the allegation that he was mentally incapable at the time the deeds were executed. The substance of the prayers of the bill is that these deeds to the defendants be cancelled and that in the alternative the land conveyed to the complainants be partitioned amongst them.

The answers denied the material allegations of the bill and plead the statute of limitations of seven years, and an amendment to the answers was filed in which it was averred:

"The complainants are estopped and ought not to be allowed to maintain this or any suit against these defendants for or on account of the matters and things alleged in the bill because of their gross laches in commencing the same, and they show to the court that John G. Greer the alleged mental incompetent through whom the complainants claim and whose executed deeds the bill seeks to avoid died on or about January 2, 1933, more than eleven years before the bill in this cause was filed, and that since his death persons best knowing about his mental condition at the time when said deeds were executed have died, viz., his widow, his physician, the surveyor who divided the land in question, the man who wrote the deeds, the Notary who took some of the acknowledgments to the deeds, and other close neighbors and associates; and, moreover the complainants and or those through whom they claim have silently stood by and without objection allowed valuable permanent improvements to be made on the land by these defendants, so that this suit should be dismissed on account of the gross laches of the complainants and those through whom they claim in instituting the same."

Upon the trial a jury was demanded by the complainants and the following issue of fact was offered by them:

"Was John G. Greer of sound or unsound mind from December 1st, 1932 up to the time of his death January 2, 1933 as charged in the bill. Answer.————."

It was insisted for the defendants that the issue offered was not determinative of the case and they moved the court to take the case from the jury and decide it upon the pleadings and the uncontradicted proof for the reason that there was no material controverted determinative question of fact to be submitted to the jury, all controverted questions being purely questions of law.

The Court granted the motion of the defendants, holding that complainants' suit was barred.

The decree of the Court granted the relief prayed for the partition of the land described in the bill, except that conveyed to the defendants Oakley Greer, Elmer Greer and Permelia Greer for life with remainder to Willard, Walter, Marie and Evelyn. The complainants have appealed from the action of the Chancellor dismissing the bill as to land transferred to the defendants just named and have assigned as error the action of the Court in granting the motion referred to.

The record discloses that the two deeds to Oakley G. Greer and Elmer Greer were executed on December 6, 1932; that these two sons had been occupying the part of their father's land which was conveyed to them for some time before the execution of these deeds, had made improvements upon the land and had continued to live upon it from before the date of the deeds until the time of the filing of the bill. The deed to Elmer Greer was recorded on January 19, 1933 and the deed to Oakley G. Greer was recorded on February 11, 1933. The deed to the wife and the other children was dated December 21, 1932, and was recorded on January 14, 1933.

The record does not show that the other deeds to the complaining children were recorded. Of these unrecorded deeds the one to the complainant Edna Greer Green was handed to her and she took it to her home and kept it until the bill herein was filed. The deed to Pearl Greer Chapman was given her by her Mother and she kept it. The deed to Cora Greer Upchurch was filed as an exhibit to the bill. She died in 1937. Ruby Greer West died the day following the death of her father and the deed to her is filed as an exhibit to the bill.

It therefore appears that the deeds sought to be invalidated by this proceeding were duly executed in December 1932, were recorded in January and February 1933, the conveyor, John G. Greer died in January 1933 and the bill herein was filed in October 1944. The defendant conveyees in these deeds took possession of the land conveyed to them, some of them made improvements, part of one of the tracts was sold to the defendant Fred Johnson, another part of this same tract was sold to Elmer Greer, some of the land was sold to the State for taxes and then sold by the State to James and Ester Upchurch. All the children of John G. Greer knew of the execution of these deeds for more than eleven years before the bill herein was filed and no one asserts that any fraud was perpetrated or unjustice done or that a fair division of the property was not made.

It also appears from the record that Dr. Crouch, the physician who attended John G. Greer in his last illness, the widow, Permelia Greer, the brother of the conveyor, B. A. Greer, who wrote the deeds and witnessed the signatures, had all died before the bill was filed.

Under these facts which do not appear to be contradicted, there are no equities in favor of the adult complainants as against the defendants Oakley G. Greer, Frona Greer Storie, Elmer Greer, Willard Greer, Walter Greer, Marie Greer Bonneau, Evelyn Greer Rains and Fred Johnson, and we find no error in the decree of the Chancellor dismissing the bill as to them.

In the case of Abraham v. Ordway, 158 U. S. 416, 15 S. Ct. 894, 895, 39 L. Ed. 1036, the Supreme Court of the United States said:

''It is now too late to ask assistance from a court of equity. The relief sought cannot be given consistently with the principles of justice, or without encouraging

such delay in the assertion of rights as ought not to be tolerated by courts of equity. Whether equity will interfere in cases of this character must depend upon the special circumstances of each case. Sometimes the courts act in obedience to statutes of limitations; sometimes in analogy to them. But is is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked. It will, in such cases, decline to extricate the plaintiff from the position in which he has inexcusably placed himself, and leave him to such remedies as he may have in a court of law.''

In 19 American Jurisprudence, paragraph 511, page 355, it is said:

''The prejudicial situation in which the complainant's suit places the defendant may be occasioned by inability on the part of the latter, because of the complainant's delay in asserting his claim, to produce evidence in defense thereof, where matters of proof have been lost, witnesses have died, and the transaction giving rise to the suit has become obscured by the lapse of time. Furthermore, relief may be denied where it appears that one who participated in the disputed transaction has died or has suffered impairment of memory or mental faculties.''

Also in 9 American Jurisprudence, paragraph 5, page 353, it is said:

''The rule is well established that a person coming into a court of equity for the purpose of obtaining cancelation of an instrument cannot demand cancelation as a matter of right; relief by way of cancelation is a matter within the sound discretion of the court and is granted

or withheld by it according to what is reasonable and proper under the circumstances of each particular case. The court should not, and generally will not, grant such relief unless it appears that no injustice will be done by placing the parties in the positions they occupied before the contract or conveyance was made. The court may in its discretion withhold relief even where the ground upon which the plaintiff seeks cancelation is clearly and indisputably established, provided it does not act capriciously and arbitrarily. The court will, in granting relief, impose such terms as it deems the real justice of the case to require.''

The applicable Sections of the Code are:

8582—''Any person having had, by himself or those through whom he claims, seven years' adverse possession of any lands, tenements, or hereditaments, granted by this state or the State of North Carolina, holding by conveyance, devise, grant, or other assurance of title, purporting to convey an estate in fee, without any claim by action at law or in equity commenced within that time and effectually prosecuted against him, is vested with a good and indefeasible title in fee to the land described in his assurance of title. But no title shall be vested by virtue of such adverse possession, unless such conveyance, devise, grant, or other assurance of title shall have been recorded in the register's office for the county or counties in which the land lies during the full term of said seven years' adverse possession.''

8583—''And on the other hand, any person, and those claiming under him, neglecting for the said term of seven years to avail themselves of the benefit of any title, legal or equitable, by action at law or in equity, effectually prosecuted against the person in possession, under re-

corded assurance of title, as in the foregoing section, are forever barred.''

8584—''No person or any one claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued.''

None of the children of John G. Greer were under any disability at the time of his death on January 2, 1933. The defendants Oakley Greer and Elmer Greer were in possession of the land conveyed to them when their father died holding under their deeds and have held adversely since that time. The widow Permelia Greer took possession of the land conveyed to her for life upon the death of her husband and retained such possession until her death on December 29, 1943.

It is insisted that the Statute of Limitations of seven years bars any recovery herein. We are of the opinion that all three of the Sections of the Code above set out apply to the adult complainants and bar any recovery by them.

As to the minor complainants, the children of Cora Greer Upchurch and Ruby Greer West, we are of the opinion that the Statute set out in Section 8584 of the Code above applies and bars any recovery by them. This statute began to run against their parents upon the death of John G. Greer on January 2, 1933, both of the parents having died after the death of their father.

It is well settled that if the Statute begins to run against the parent it will continue to run against the heirs. In the case of Patton v. Dixon, 105 Tenn. 97, on page 102, 58 S. W. 299, on page 300, Justice Wilkes said:

''The minor could not recover, except in the right of the mother. She had no independent interest or right of action when the adverse possession began. When the

mother died, her right of action, only, passed to the daughter, and that was extinguished after the lapse of seven years from the adverse possession. Unquestionably this is correct, if the bar of seven years had been complete when the mother died, as her only right of action, under that state of facts would have been extinguished, and there would have been none to survive to the daughter.

"But, whether the bar was complete when the mother died or not, the statute had commenced to run, and was not arrested by her death. The minor had no separate right of action, but only such as might survive to her from her mother. This view of the law is, we think, sustained by the cases of Guion v. Anderson, 8 Humph. 298; Weisinger v. Murphy, 2 Head 674; King v. Nutall, 7 Baxt. [22], 227; Burns v. Headrick, 85 Tenn. 102, 2 S. W. 259; Alvis v. Oglesby, 87 Tenn. 172, 10 S. W. 313; Gross v. Disney, 95 Tenn. [592], 596, 32 S. W. 632."

See also Jones et al. v. Coal Creek M. & M. Co., 133 Tenn. 159-167, 180 S. W. 179.

The statute began to run when possession was taken of the property involved. This question is fully discussed in the case of Kittel v. Steger, 121 Tenn. 400, on pages 407 to 412, 117 S. W. 500. Also see Inman v. Tucker, 138 Tenn. 512, 198 S. W. 247.

All the assignments of error are overruled and the decree of the Chancellor is affirmed. The costs of the appeal will be paid by the appellants. The cause is remanded to the Chancery Court of Fentress County for the execution of its decree.

Affirmed and remanded.

Felts and Hickerson, JJ., concur.