JOHN MAHUNDA and SADIE MAHUNDA
BELLAMY, Appellees, v. RICHARD THOMAS and
LILLIAN THOMAS, Appellants.—402 S.W.(2d) 485.

Western Section, at Jackson. October 6, 1965.

Certiorari Denied by Supreme Court April 18, 1966.

472

John C. Robertson and Hardison, Robertson & Harkavy, Memphis, for appellants.

Mary Guidi and W. C. Rodgers, Memphis, for appellees.

BEJACH, J. This cause involves an appeal by defendants, Richard Thomas and Lillian Thomas from a decree in the Chancery Court of Shelby County, Tennessee, entered February 15, 1965, setting aside and cancelling a warranty deed from Nancy Jones Rogers

to defendants Richard Thomas and Lillian Thomas, his wife, dated January 22, 1949, recorded January 25, 1949 in Book 2344, page 243 in the Register's Office of Shelby County, Tennessee. Said deed conveys two tracts of land containing a total of about 17 acres in Shelby County, Tennessee near Cordova. Complainants are a niece and nephew of Nancy Jones Rogers who died in 1954. W. J. Ling of Memphis, Tennessee, along with defendants Richard Thomas and Lillian Thomas, was also made a party defendant, because he was trustee under a trust deed executed by defendants Richard Thomas and Lillian Thomas. All payments due under the trust deed, had, however, been paid prior to the suit in this cause, or were tendered into court while same was pending, and Mr. Ling is no longer involved in the litigation. In this opinion, the parties will be referred to as complainants and defendants.

The property involved in this lawsuit and defendants are the same as were involved in the former lawsuit of Mildred Medlock and Lee Mahunda v. Richard Thomas, Lillian Thomas, W. J. Ling, Trustee, Mack Jones and W .R. (Rob) Anderson, which was decided August 23, 1956 in favor of defendants by an opinion written by Judge Avery, Presiding Judge of this Court, Western Section, affirming a decree of the Chancery Court of Shelby County, rendered by Chancellor Frazer. That case was brought by another niece and nephew of Nancy Jones Rogers. It sought to invalidate the deed from Nancy Jones Rogers to Richard Thomas and Lillian Thomas on the ground that a confidential relationship existed between Nancy Jones Rogers and Richard and Lillian Thomas, and that the conveyance was made without independent advice. The instant case seeks to invalidate the deed on the ground that a confidential relationship

existed between Nancy Jones Rogers and the Reverend B. L. Rogers, a preacher to whom Nancy Jones Rogers had agreed to convey the land in question, and that she conveyed same to defendants without obtaining independent advice. Complainants' bill also alleges, "That, moreover, prior to and on January 22, 1949, Nancy Jones Rogers was about 78 years of age, blind, and suffering from physical infirmities, even more readily being subject to the dominance and ascendency of the Rev. B. L. Rogers over her."

The proof shows that prior to January 22, 1949, the date of the deed, Nancy Jones Rogers had agreed to convey to Rev. B. L. Rogers, who was her pastor, but not related to her, the property in question for $950.00, but that due to friction in his church, Rev. B. L. Rogers had moved from the Cordova neighborhood to the White Station neighborhood in Shelby County, and no longer desired the property. He had paid to Nancy Jones Rogers the sum of $137.80, which he wished to have returned to him, and was, therefore, instrumental in helping to negotiate the sale of the property to defendants, Richard Thomas and Lillian Thomas, so that he could get his money back. The proof shows that Nancy Jones Rogers made several trips to the office of Sohm, Humphreys & Ling, who prepared the deed, trust deed, and settlement sheet and examined the title for defendants that at the closing, Nancy Jones Rogers made a concession or donation of $100.00 to Richard and Lillian Thomas, thus making the net purchase price $850.00. This donation is shown on the settlement sheet. The sum of $137.80, which was the cash payment recited in the deed, was by direction of Nancy Jones Rogers, paid to Rev. B. L. Rogers, thus reimbursing him for the amount which he had paid. The remainder of the purchase price amounting to $712.00

was evidenced by annual notes of $100.00 each, secured by a trust deed to Alfred Sohm and William J. Ling, Trustees. This balance of $712.00 was evidenced by seven promissory notes, the first six for $100.00 each, the last note being for $112.70. The deed reserves the right for Nancy Jones Rogers, for the remainder of her life to have the use and occupancy of a three room frame house on the property conveyed. To complainants' bill, defendants filed a plea of adverse possession of more than seven years, coupled with an answer which denies that on and prior to January 22, 1949, Nancy Jones Rogers was without competent and independent advice regarding the nature and contents of the warranty deed and legal consequences of said deed, and avers that she did have competent and independent legal advice, and knew exactly what she was doing when she signed the warranty deed in question. Said answer also denies that Nancy Jones Rogers signed the warranty deed in question as the result of the dominant ascendant spiritual relationship of Rev. B. L. Rogers, and that she signed said warranty deed in trust, reliance and dependence upon his advice.

The proof shows that Mack Jones, who had been a tenant of Nancy Jones Rogers for $50.00 per year, continued his occupancy of the property involved as tenant of defendants, Richard Thomas and Lillian Thomas, but at an increased rental of $25.00 per year, making a total of $75.00 per year. The proof shows that this $75.00 per year was paid by Mack Jones to Nancy Jones Rogers and credited each year on the $100.00 due from defendants, the additional $25.00 being paid by defendants. The notes involved were produced in this cause by defendants, accompanied by the testimony that same had been delivered to Lillian Thomas to be delivered by her to Mr. Rob Anderson at whose store they were payable.

Defendants also testified that Nancy Jones Rogers, during her lifetime, waived interest on the notes.

The Chancellor held that a confidential relationship existed between Nancy Jones Rogers and Rev. B. L. Rogers, and on authority of Roberts v. Chase, 25 Tenn. App. 636, 166 S.W.(2d) 641, and Turner v. Leathers, 191 Tenn. 292, 232 S.W.(2d) 269, set aside the deed on the ground that a confidential relationship existed between Nancy Jones Rogers and Rev. B. L. Rogers who was anxious to get back the sum of $137.80 paid by him to Nancy Rogers, and that Nancy Jones Rogers did not have independent advice. With reference to defendants' plea of adverse possession and statute of limitations of seven years, the Chancellor held that Mack Jones had first rented the land from Nancy Jones Rogers in 1947, and that he continued to pay the rent to Nancy Jones Rogers until 1954, and consequently, that the relationship of landlord and tenant did not exist between Mack Jones and the defendants prior to 1954, so as to make his tenancy and occupancy of the property adverse to Nancy Jones Rogers.

Defendants perfected their appeal to this Court, and, as appellants, have filed nine assignments of error. We deem it unnecessary to discuss these assignments separately. They present adequately defendants' objections to the decree, and the entire case is before us for trial de novo.

 The rule as to independent advice, as stated by Felts, J., speaking for this Court Middle Section, in Roberts v. Chase, is as follows:

"The circumstances of some transactions are such that the only way in which the fiduciary can rebut the

presumption of invalidity is by showing that his principal had the benefit of independent advice. Brispham's Principles of Equity, 10th Ed., p. 399; Miller v. Proctor, supra (24 Tenn.App. 439, 145 S.W.(2d) 807); Peyton v. William C. Peyton Corp. [23 Del.Ch. 321], 7 A.(2d) 737, 123 A.L.R. 1482, and the cases collected in the annotation, 123 A.L.R. 1505. Mr. Pomeroy says: 'The question as to whether such independent advice is essential is ordinarily determined with respect to the nature of the confidence reposed, the nature of the transaction, and the circumstances in each particular case. In other words, a rule requiring proof of independent advice is ordinarily applied where it is a reasonable requirement and where the circumstances are such that it would be difficult to show the fairness of the transaction without proof of independent advice. The rule is peculiarly applicable in gift cases, particularly where the effect of the gift is to impoverish the donor.''

Roberts v. Chase, 25 Tenn.App. 651, 166 S.W.(2d) 651.

In Turner v. Leathers, the rule is stated as follows:

''The rule of independent advice means that the advisor must not only be competent but independent.

'Proper independent advice in this connection means that the donor had the (preliminary) benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interest of the donee as to be in position to advice with the donor impartially and confidently as to the consequences to himself of his proposed benefactions.' ''

Turner v. Leathers, 191 Tenn. 297-298, 232 S.W.(2d) 271.

As stated by Judge Hickerson, speaking for this Court, however, the rule has its limitations, as follows:

"As we understand, the rule of 'independent advice' is never applied in testing the validity of a transaction unless a confidential relationship between the parties to the transaction is pleaded and proved. When so pleaded and proved any transaction between the parties whereby the dominated party suffers a detriment and the dominating party receives a benefit is presumed to be invalid. Proof that the dominated party had independent advice concerning the transaction between the parties is one method of overcoming the presumption of invalidity."

Peoples Bank v. Baxter, 41 Tenn.App. 710, 720-721, 298 S.W.(2d) 732, 737.

As applied to the facts of the instant case, however, we think the rule of independent advice is wholly inapplicable. To be applicable, the confidential relationship would have had to exist between Nancy Jones Rogers and the defendants, Richard Thomas and Lillian Thomas. No such confidential relationship is even alleged, much less proved. The bill does allege a confidential relationship between Nancy Jones Rogers and the Rev. B. L. Rogers; but such relationship is not proved. All that is proved is that Nancy Jones Rogers was a devout church member, and a great admirer of Rev. B. L. Rogers, that she sided with him in the controversy between him and some of the members of his church when he was in the Cordova neighborhood, and that she cooperated in permitting him to get back his $137.80 out of the purchase

price paid by defendants. The proof shows that when he moved from the Cordova neighborhood, he desired to get out of his contract to buy the property from Nancy Jones Rogers and wished to have returned the $137.80 that he had paid to her. True, in order to get back his $137.80, he assisted in promoting the sale from Nancy Jones Rogers to defendants, but there is neither allegation nor proof that he was either acting in any way as agent for defendants, or that he, in any way, colluded with defendants.

In disposing of the alleged confidential relationship between Nancy Jones Rogers and Richard and Lillian Thomas in the case of Mildred Medlock and Lee Mahunda, v. Richard Thomas, et al., in which case it was held that no such confidential relationship existed, Judge Avery, speaking for this Court, said:

"In regard to a relationship of a fiduciary, and that relationship which we know as a confidential relationship, we are of the opinion that there are two groups which have very distinct legal implications one from the other.

The first group embraces cases which actually show undue influence growing out of and exerted by the dominant party over the subservient one for the express purpose of obtaining that advantage which it is claimed he did obtain. In such cases, the donor or grantor was peculiarly susceptible to such influences because of weakness, ignorance, old age, necessitous circumstances and the like. It is likely that those cases, to have a correct solution, are dependent upon the principle that no one shoud be allowed to obtain a benefit growing out of his own acts of perpetrated fraud, and such conveyances or advantages so obtained are void.

The second group embraces cases of presumed undue influence. In such cases there is no proof of actual undue influence, but there is proof of a fiduciary relationship or confidential relationship between the parties which enables the donee, or grantee, to exercise dominion and influence over the donor, or grantor. In such cases, the Courts have held that such relationship raised the presumption that undue influence was exerted by the donee and that he must rebut that presumption,—in other words, he must negative undue influence, that means to prove that the gift or transaction was in fact a voluntary or spontaneous act of the donor in acting under circumstances to enable him to exert an independent will and justify the Court in holding that the act was the free exercise of the donor's will.''

■ Furthermore, even if a confidential relationship had existed, which the record does not show, between Rev. B. L. Rogers and Nancy Jones Rogers, that would not invalidate the conveyance to defendants or raise any presumption that it was invalid, in the absence of some showing of collusion between Rev. B. L. Rogers and defendants.

In any event, we think the Chancellor was clearly wrong in ruling that defendants were not entitled to have their plea of adverse possession sustained. Said plea of adverse possession is based on Sections 28-201, 28-202, and 28-203, T.C.A. et seq. More than seven years elapsed between January 25, 1949, the date when defendants' deed was recorded, and February 18, 1957 when complainants' bill in the instant case was filed.

■ In ruling that defendants were not entitled to rely on the defense of adverse possession, the Chancellor

made a distinction between the 3.9 acre tract, on which Nancy Jones Rogers continued to live after executing her deed to defendants and the other 13 acre tract. With reference to the 3.9 acres on which Nancy Jones Rogers continued to live as she had a right to under the reservation in her deed, the Chancellor was of opinion that this prevented defendants from claiming adverse possession as long as Nancy lived; and with reference to the 13 acre tract, he was of opinion that until 1954, when Nancy Jones Rogers died, Mack Jones, the tenant through whose possession defendants claim adversely, was the tenant of Nancy Jones Rogers, and not the tenant of defendants. On both aspects of this ruling, we think the Chancellor was in error. The proof is clear, and there is none to the contrary, that Mack Jones was, from the date of the deed in January 1949, the tenant of defendants, and that the $75.00 per year rent which he paid to Nancy Jones Rogers was for the account of and was credited to defendants as part payment on their deferred purchase money note of $100.00 each year. The law is clear in Tennessee that a tenant may hold land adversely for and on behalf of his landlord. Hammett v. Blounts, Lessee, 31 Tenn. 385. Also, the general rule of law on this subject is stated in 3 Am.Jur.2d, Adverse Possession,—sec. 15, page 95, as follows:

"What a man may do himself in the matter of taking and holding possession of real estate for adverse possession purposes he may do by or through another."

The testimony of Mack Jones is that he planted cotton, corn and other crops each year on the 13 acres, and that he lived on the 3.9 acre tract, kept his mules there and had a garden there. Defendants, were, therefore, through the occupancy of their tenant, Mack Jones,

in complete adverse possession of the entire tract of land, subject only to the right of Nancy Jones Rogers to live there. It should be noted, in this connection, that Nancy Jones Rogers did not reserve a life estate in either the entire tract, or even in the 3.9 acres, but merely reserved a right to live there during the remainder of her life, which right was never questioned. In that situation, Nancy Jones Rogers was herself, in effect, a tenant of defendants under the provisions of the deed. On this subject, volume 3, Am. Jur.2d—Adverse Possession,— sec. 163, page 245, says:

"Ordinarily where a grantor continues in possession of land after the execution and delivery of the deed, his possession will be either that of tenant or trustee of the grantee; he will be regarded as holding the premises in subserviency to the grantee. Thus the occupation of land by the grantor, after conveyance made, is presumed to be under, and in subordination to, the legal title held by his grantee, for he is ordinarily estopped by his deed from claiming that his holding is adverse. * * *

Where, although the title to land is conveyed to another, the grantor is entitled to remain in possession as a matter of right, under a reservation of the life estate, such possession will ordinarily be regarded as being under and consonant with the grantor's rights and the grantee's title, rather than under the independent claim of title hostile to the grantee."

In Bozarth v. Watts, (Tenn.Ch.App.) 61 S.W.108, the Tennessee Court of Chancery Appeals held that a father who had conveyed real property to his children, and who remained in possession thereof, was not in possession

adversely. In Green v. Greer, 29 Tenn.App. 586, 198 S.W. (2d) 822, this Court, Middle Section, held that lack of mental capacity on the part of grantor did not prevent the running of the seven years statute set out in sec. 28-203, T.C.A.; and, in Akers v. Gillentine, 33 Tenn.App. 212, 231 S.W.(2d) 372, it held the same with reference to adverse possession under a deed alleged to have been fraudulent.

 The contention advanced by counsel for complainants that defendants are not entitled to rely on the defense of adverse possession because, on the same day that they obtained their deed from Nancy Jones Rogers they reconveyed the property in trust to Alfred Sohm and W. J. Ling, Trustees, is wholly without merit. Defendants' possession through their tenant, Mack Jones, was not adverse to the rights of the trustees under the trust deed, but merely adverse to the rights of Nancy Jones Rogers, who had conveyed the title to them, under the provisions of the deed.

For the reasons hereinabove stated, complainants' assignments of error must be sustained, the decree of the Chancellor reversed, and complainants' bill dismissed.

The costs of the cause, including both those of the Chancery Court and those of the Court of Appeals, will be adjudged against the complainants, John Mahunda and Sadie Mahunda Bellamy, and their surety on the cost bond filed in the lower court.

Avery, P.J. (S.W), and Carney, J., concur.