John SIMMONS, Jr., Executor of the Estate of John F. Simmons, Plaintiff-Appellant,

v.

Everett FOSTER, Bertie Hopkins Cowden and the First National Bank of Petersburg, Tennessee, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

Sept. 1, 1981.

Permission to Appeal Denied by Supreme Court
Nov. 2, 1981.

Rondal T. Wilson, Wilson & Hunt, Shelbyville, Pat M. Fraley, Fayetteville, for plaintiff-appellant.

Chas. W. Wade, Lewisburg, Robert W. Simms, Simms & Simms, Robt. W. Stevens, Stevens, Bagley & Stevens, Fayetteville, for defendants-appellees.

## OPINION

CANTRELL, Judge.

The issue in this case is the right of the surviving party to a joint bank account as against the executor of the estate of the decedent. The executor claims that the transfers to the joint accounts were void because of a confidential relationship and that, in any event, the accounts were not survivorship accounts.

The appellant is the executor of the estate of John F. Simmons who died on the 16th day of May, 1977. Mr. Simmons was the brother-in-law and second cousin of the defendant Bertie Hopkins Cowden. Mrs. Cowden lived with her sister and Mr. Simmons for most of the time from age three and a half until she married at the age of nineteen. When Mrs. Cowden's first husband died in 1933 she went again to live with Mr. and Mrs. Simmons for a winter in Huntsville, Alabama; after that she moved to Petersburg where she has lived ever since. When her sister died in 1965 Mr. Simmons came to Petersburg and lived with Mrs. Cowden until his death. They had a close relationship described by Mrs. Cowden as one of parent and child.

During the last two or three years of Mr. Simmons' life, Mrs. Cowden took care of all of his needs. She provided transportation and food, did his laundry, wrote his checks, and discussed his business affairs with him.

On April 6, 1966 the decedent opened a joint checking account at the First National Bank of Petersburg in the name of John F. Simmons or Bertie H. Cowden. At his death there was a balance in that account of $4,883.46. After payment of medical bills and funeral expenses by Mrs. Cowden, $3,719.08 remained in the account. There was no signature card on file for this account.

In November of 1976 Mr. Simmons went to the Bank and directed its President, Mr. Foster, to convert his U.S. Savings Bonds into cash. Mrs. Cowden was with him. He endorsed all of the bonds himself and directed the Bank to deposit the proceeds from his Series E Bonds ($31,943.33) into a joint savings account in the name of John F. Simmons or Bertie H. Cowden. There was no signature card on file for this account. However, Mr. Simmons told the Bank officer that he wanted Mrs. Cowden to have the funds if anything happened to him.

The Series H Bonds were sent to the Federal Reserve for redemption. When the check was returned to the bank, Mr. Simmons went to the bank by himself and deposited the funds ($15,000.00) in a savings account in the name of Bertie H. Cowden.

On May 17, 1977, the day after Mr. Simmons' death, the plaintiff-executor went to the bank and obtained decedent's will from a safety deposit box and had it probated later that day. He represented to the bank that he was the qualified executor of the estate and obtained a transfer of the joint checking account to an estate account. However, upon further examination of the bank records, Mr. Foster discovered that the checking account was a joint account and upon the advice of the bank's attorney, refused to transfer the funds to the estate account.

Mr. Simmons had executed a will in October of 1972 appointing plaintiff executor of the estate and making a specific bequest of a diamond ring to plaintiff. All of his other property, according to the will, was to be divided equally between Homer Simmons, decedent's brother, and Mrs. Cowden. Homer Simmons predeceased the decedent.

Plaintiff, as executor of the estate of Mr. Simmons, brought this action to recover the funds from the accounts which had been paid to Mrs. Cowden. At the trial the Chancellor granted defendant Foster's motion to dismiss at the conclusion of the plaintiff's proof and at the conclusion of all of the proof the Chancellor dismissed the action as to all defendants.

We will discuss the appellant's second issue first. That issue is:

> Whether the close and confidential relationship which existed between the decedent John F. Simmons and the defendant Bertie Cowden and the dominion and control which she exercised over the decedent required that independent advice be provided to the decedent to validate a purported transfer from the decedent to the defendant Cowden.

■ A transaction in which one party confers a gratuitous benefit on another is void if the recipient exercised undue influence to obtain it. This statement of the law applies whether the transaction is analyzed in terms of the law of gifts or under the contract theory. *Gordon v. Thornton*, 584 S.W.2d 655 (Tenn.App.1979). The Western Section of the Court of Appeals in *Parham v. Walker*, 568 S.W.2d 622 (Tenn. App.1978) summarized the effect of undue influence as follows:

> It is not influence upon a capable mind that is prohibited. It is the *undue* influence thereof which is the subject of judicial condemnation. *Patterson v. Mitchell* (1929 MS) 9 Tenn.App. 662. For the doctrine of undue influence to be applicable there must be a confidential relationship in existence whereby one party (donee-grantee-beneficiary) is in a position, because of the confidential relationship, to exercise undue influence over the mind

and will of the other (donor-grantor-testator). *Turner v. Leathers*, (1950) 191 Tenn. 292, 232 S.W.2d 269. The burden is upon the one who alleges the existence of such a confidential relationship to prove it. *In re Estate of Rhodes* (1968) 222 Tenn. 394, 436 S.W.2d 429. Once its existence is proven, undue influence is presumed and the recipient must prove an exception to the presumption by carrying the burden of showing the fairness of the transaction and the non-existence of the presumed undue influence. If the recipient fails in that burden, the transaction is presumed void. *Miller v. Proctor* (1940 MS), 24 Tenn.App. 439, 145 S.W.2d 807

. . . .

*Id.* at 624.

We will concede that there was a confidential relationship between the decedent and Mrs. Cowden at the time the savings accounts were opened in 1976. The decedent had lived with Mrs. Cowden for over fifteen years by then. She cooked his meals, did his laundry, drove him to the doctor, discussed his business affairs with him, and during the last three years of his life she wrote most of his checks. The plaintiff argues that this relationship gives rise not only to a presumption of invalidity as to the transfers, but also requires the application of the rule of independent advice.

■ However, the presumption of the invalidity of a gift to a dominant party from the other party to a confidential relationship is rebutted by clear and convincing evidence of fairness. *Richmond v. Christian*, 555 S.W.2d 105 (Tenn.1977). Independent advice is one example, but not the only one, of proof of fairness. *Id.* at 107–108. In *Richmond*, independent advice was required in order to validate the gift because (1) the donor was impoverished by the gift, (2) she was feeble and dependent on the defendant who lived with her, and (3) she suddenly changed her prior plan to divide her estate equally among her three children. On the contrary, the evidence in the present case shows that the decedent was an active man, strong-willed, competent,

and in good health for a man of his age. Nor was Mr. Simmons impoverished by the gift; he owned one of the savings accounts jointly with Mrs. Cowden and the joint checking account had a substantial balance.

■ Under the circumstances, the gift of the savings accounts to Mrs. Cowden seems perfectly natural and not the product of any undue influence. Mrs. Cowden and the decedent had been very close for a number of years and the decedent was not particularly close to the children of his deceased brother.

Consequently, although there was a confidential relationship between the decedent and Mrs. Cowden, she rebutted the presumption of undue influence by demonstrating that the decedent was a capable and strong-willed man. Evidence of independent advice is not required to validate the gift because the presumption of invalidity is overcome by the proof in the record.

We find this issue to be without merit.

The first issue raised by the appellant is as follows:

Whether, absent a contract creating a right of survivorship, the establishment of a joint tenancy in personal property creates a right of survivorship in the surviving tenant?

The issue in the instant case is whether the funds in the two joint bank accounts should have been transferred to the survivor or whether the funds should have passed under the decedent's will. The plaintiff contends that in the absence of a contract creating the right of survivorship, personal property held by a joint tenant descends or is vested in the heirs, executors, or administrators of the deceased tenant. T.C.A. § 64–107; *Peebles v. Peebles,* 223 Tenn. 221, 443 S.W.2d 469 (1969). We agree with the statement in *Peebles* where the Court said:

... [W]here an instrument creates an estate in joint tenancy, nothing else appearing, the right of survivorship as an incident thereto is abolished by the statute; but where the instrument by express words or necessary implication manifests an intention to create an estate

with right of survivorship, then this statute has no application.

*Id.* at 224, 443 S.W.2d at 470.

The whole issue in this case is whether there is anything else appearing which creates the right of survivorship.

There are four common law theories upon which the rights of a survivor may be based; contract, joint tenancy, trust, or gift. 43 A.L.R.3rd, *Creation of Joint Savings Account or Savings Certificates as Gift to Survivor,* 971 (1972). The contract theory has been specifically adopted in Tennessee. *Lowry v. Lowry,* 541 S.W.2d 128 (Tenn.1976). The Court of Appeals had held in *Lowry* that the burden was on the survivor to affirmatively show that the funds in the account were intended as a gift; and that absent such a showing he could not rely upon the language used in creating the joint tenancy. The Supreme Court rejected this reasoning and held instead that absent clear and convincing evidence of contrary intent expressed at the time of its execution, a bank signature card containing an agreement in clear and unambiguous language that a joint account with rights of survivorship is intended, creates a joint tenancy enforceable according to its terms, and upon the death of one of the joint tenants, the proceeds pass to the survivor. In the present case, however, there is no bank signature card for either joint account. Since the agreement between the parties as to survivorship rights is the basis of the contract theory, the defendants must show by other evidence that such a contract existed.

Who are the necessary parties to such an agreement? The Court in *Lowry* did not discuss any of the sub-theories within the contract theory. *Lowry* did cite with approval *Agrelius v. Mohesky,* 208 Kan. 790, 494 P.2d 1095 (1972), which adopted the third-party beneficiary sub-theory. The Court in *Agrelius* adopted the position that the contract between the bank and the depositor runs to the benefit of the non-depositing party. The Court, citing the earlier case of *In re Estate of Smith,* 199 Kan. 89, 427 P.2d 443 (1967), stated:

The signature card constituted a contract in writing between Rachel and the bank. No serious contention is made by the appellees that the language used was insufficient to create a joint tenancy with right of survivorship. The indication of the grantor (Rachel) is clearly indicated by the use of the "magic" words commonly regarded by our decisions as creating a joint tenancy. [citing cases] The fact that Floyd had no agreement with Rachel, and did not appear with her when the account was established, is of no real consequence. The legal significance of the contract entered into by Rachel and the bank was the creation of a joint tenancy bank savings account with the right of survivorship wherein Floyd was a third-party donee beneficiary. In *Goeken v. Bank of Palmer*, 104 Kan. 370, 179 P. 321, it was held:

"A person may avail himself of a promise made by a second party to a third for the benefit of the first, although the latter was not a party to it, and had no knowledge of it when made."

■ The crucial question, then, is whether an agreement existed between the bank and the decedent to make the joint accounts joint tenancies with the right of survivorship in Mrs. Cowden. With respect to the savings account it is clear from the record that the decedent intended the account to be a joint tenancy with the right of survivorship. The bank officer testified that Mr. Simmons upon opening the joint savings account stated his intent that if anything happened to him he wanted Mrs. Cowden to get the money out of the joint account. The assent of the bank may be presumed from the fact that its officer opened the account and ultimately paid the funds to Mrs. Cowden in accordance with Mr. Simmons' expressed wishes.

■ We see no Statute of Frauds or parol evidence problem relative to the establishment of the agreement between the bank and the depositor to pay the money in the savings account to Mrs. Cowden if she survived the depositor. *See* 10 Am.Jur.2d, *Banks*, § 389 (1963); T.C.A. § 29–2–101(5).

We hold, therefore, that the contract necessary to create a joint account with the right of survivorship may be proved by oral testimony and that the right of survivorship may vest in a third party beneficiary who was not a party to the agreement between the bank and the depositor. In the instant case we further hold that the testimony establishes such a contract with respect to the joint savings account. We think it is clear that the depositor, Mr. Simmons, intended for Mrs. Cowden to receive the balance in the account at his death and so instructed the bank at the time he opened the account. Therefore, the right to receive the funds in the joint savings account passed to Mrs. Cowden at Mr. Simmons' death.

■ With respect to the joint checking account, there is no evidence in the record of such an agreement between the bank and Mr. Simmons. Nor is there any evidence to prove any of the other theories by which the right of survivorship may be established. Therefore, we hold that there was no right of survivorship created and that the executor is entitled to the funds in that account.

The final issue raised by the appellant concerns the liability of the bank and its officer, Mr. Foster, for the wrongful payment of the funds on deposit to Mrs. Cowden. This issue applies only to the funds in the joint checking account since we have held that Mrs. Cowden had a right of survivorship in the joint savings account.

T.C.A. § 45–2–703 reads as follows:

*Deposits in two or more names.*—(a) When a deposit has been made or shall hereafter be made, in any bank in the names of two (2) or more persons, payable to either, or survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons, whether the others be living or not; and the receipt or acquittance of such person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made.

(b) No bank so paying any such survivor shall thereby be liable for any estate, inheritance or succession taxes due this state.

■ Defendants Foster and the bank argue that they are absolved from all liability for their payment of joint accounts to Mrs. Cowden by the operation of the above statute. Plaintiff contends that while the statute protects the bank when it pays upon demand by either joint tenant of a joint account, it does not allow a bank to refuse the initial demand of the legal representative of the deceased joint tenant who funded the account. While it is arguable that the statute does not apply to a joint account where there is no right of survivorship since the statute requires that the account be "payable to either, or survivor," we think the statute applies even where the account is not a joint survivorship account. The comma after "either" and the word "or" seem to indicate that if the account is payable to either party, or to either party or survivor that the bank is protected if it pays the funds to the survivor.

■ This holding is supported by the obvious policy behind the enactment of the statute. The bank is a mere stakeholder of the funds in a joint account. It is unable to determine who is legally entitled to such funds upon the death of one of the parties. In the absence of a contract the funds may belong to the survivor, the estate of the decedent, or to both in the same ratio as their contributions to the account. Such was the state of the law when T.C.A. § 45–2–703 was enacted in 1969 prior to *Lowry.* The position of the bank was quite precarious even with regard to apparent survivorship accounts prior to the adoption of the contract theory since the survivorship aspect of each joint account was dependent on the facts in each case and the existence of a bank signature card was not conclusive. Virtually the same situation exists subsequent to *Lowry* relative to joint accounts without bank signature cards. Therefore, the bank is protected by the statute when after the death of one of the joint owners of the account it pays the funds in the accounts to the other joint owner. It does not affect the rights of third parties, such as the plaintiff in this case, who may have a claim on the funds against the other joint owner. It merely relieves the bank of any liability to that third party for paying funds to the person shown on their records as a joint owner. Therefore the Trial Court was correct in dismissing the complaint against bank and Mr. Foster.

The judgment of the Trial Court is modified to allow the appellant's claim against Mrs. Cowden for the funds in the joint checking account. In all other respects the judgment of the Trial Court is affirmed. The case is remanded to the Chancery Court of Lincoln County for any further necessary proceedings. The costs are taxed one-half to the appellant and one-half to the defendant Bertie Hopkins Cowden.

MODIFIED, AFFIRMED, AND REMANDED.

TODD, P.J., (M.S.), and CONNER, J., concur.