IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 18, 2006 Session

## IN RE: The Estate of MARJORIE LOUISE BREVARD, Decedent, W. TERRY BARLOWE, Proponent-Appellant, v. DOROTHY BREVARD and THE ESTATE OF JOHN BREVARD, Contestants-Appellees

Direct Appeal from the Circuit Court for Sevier County
No.  2004-0450-II     Hon. Richard R. Vance, Circuit Judge

No. E2005-01378-COA-R3-CV  - FILED AUGUST 30, 2006

The Trial Court granted contestants of a Will summary judgment, voiding the Will.  On appeal, we vacate the summary judgment.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Vacated.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and, SHARON G. LEE, J., joined.

Brian T. Mansfield, Sevierville, Tennessee, for proponent/appellant.

William L. Harbison, Nashville, Tennessee, for appellees.

### OPINION

        In this Will contest, the Trial Court granted the contestants of the Will summary judgment voiding the Will, and the proponent has appealed.

### Background

        Decedent died on February 14, 2004, and Terry Barlowe submitted the Decedent's purported will for probate.  John and Dorothy Brevard filed a Notice of Contest with the Probate Court, arguing that the Will offered by the Proponent is not the Last Will and Testament of the Decedent "because:  1) it was not duly executed and does not represent the wishes of the [D]ecedent; and 2) it was procured as the result of undue influence."

        An administrator *pendente lite* was appointed, and the Probate Court certified the will contest to the Circuit Court.

The Proponent and Maureen Martinson were deposed. The Proponent, is the pastor of Spirit-Life Family Worship Center in Madison, Alabama, and he testified that he and his wife first met the Decedent in November 1996, when they stayed at the Brevard Inn, owned by the Decedent. During the subsequent years, the Barlowes returned to the Brevard Inn on numerous occasions and developed a friendship with Decedent. The Decedent visited the Barlowe residence in Madison on several occasions, and often attended the Proponent's church. The Decedent never became a member of Spirit-Life Family Worship Center, but had a close relationship with Maureen Martinson. Martinson testified that she and the Decedent began living together in 1991. They also attended the same church, and were both ordained ministers affiliated with the Church of God World Harvester.[1]

Barlowe testified that the Decedent asked him on several occasions to help her write a will, and he purchased a software package capable of producing legal documents. On August, 22, 2002, Decedent came to Barlowe's church office in Madison to draft the will. Barlowe described the drafting process as follows:

> I had purchased the law program either the day before she . . . called or that morning, installing it in the computer, pulled up wills. It asked questions. I asked her what it asked, and I typed in the information. . . . There was one . . . thing after the other. I just said, what do you want to do here? She'd tell me, I'd type it in, and printed it out. She carried it home and that was the last I heard about the will.

The document instructed that in the event of the Decedent's death the "rest and residue"[2] of her estate would go to Martinson. It also listed the Church of God World Harvester as the contingent beneficiary. It appointed Barlowe as executor and Mrs. Barlowe as the contingent executrix. The Decedent executed the document at a bank in Gatlinburg on November 14, 2002. There were three witnesses. Neither Barlowe nor Ms. Martinson were present at the execution, and neither of them knew the witnesses.

## Summary Judgment

On January 27, 2005, the Contestants filed a Motion for Summary Judgment arguing that the Will offered by Barlowe was procured as the result of undue influence, prepared as the result of the unauthorized practice of law, and was therefore, invalid. On May 25, 2005, the Circuit Court entered an Order granting Contestants' Motion for Summary Judgment. The Court reasoned that:

> Pastor Terry Barlowe engaged in the unauthorized practice of law when he prepared

---

[1]The Church of God World Harvester is a network of ministries located in several states. Barlowe was its executive director.

[2]In the context of the document the "rest and residue" of the estate consisted of everything except personal property. The document never specifies how the personal property is to be distributed.

the will which has been offered for probate by the Proponent; that a confidential relationship existed between Marjorie Brevard and Pastor Barlowe; and that a presumption of undue influence applies to the preparation of the will which the Proponent failed to rebut by clear and convincing evidence . . . .

**Proponent's Issues on Appeal**

A.      Whether the Circuit Court erred in granting summary judgment in favor of the Contestants on the theory of undue influence?

B.      Whether the purported will is void because it resulted from the unauthorized practice of law?

C.      Whether the Circuit Court erred in invalidating the entire will?

"The standard of review of a summary judgment determination is *de novo* without any presumption of correctness accorded the trial court's judgment." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). The appellate court's "only task in deciding a motion for summary judgment is to determine whether 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* When making this determination, "[c]ourts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). "If, after such consideration, a genuine issue of fact remains for trial, or if there is doubt as to whether or not such genuine issue remains for trial, the summary judgment must be overruled." *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.,* 13 S.W.3d 343, 347 (Tenn. Ct. App. 1999).

The moving party must do more than make conclusory assertions "that the nonmoving party has no evidence." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). Instead, the moving party must either "affirmatively negate an essential element of the nonmoving party's claim" or "conclusively establish an affirmative defense that defeats the nonmoving party's claim." *Id.* at 215 n.5.

The Proponent argues that the Circuit Court "reached factual conclusions either wholly unsupported in the record or at least in genuine dispute." The Contestants argue that the undisputed facts establish sufficient suspicious circumstances to establish a presumption of undue influence as a matter of law. They further argue that the Proponent has failed to rebut this presumption with clear and convincing evidence; therefore, the purported will is void.

Contestants may challenge a will on the grounds that "the decedent was subject to the undue influence of another in executing the will." *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002). Whether certain suspicious circumstances are sufficient to invalidate a will is "decided by

the application of sound principles and good sense to the facts of each case." *Halle v. Summerfield*, 287 S.W.2d 57, 61 (Tenn. 1956).[3]

Generally, there is no prescribed type or number of suspicious circumstances necessary to invalidate a will. However, the doctrine of undue influence is applicable only where there is a confidential relationship[4] with the testator whereby one party is able to dominate and exercise undue influence over the testator.[5] *Keasler v. Estate of Keasler,* 973 S.W.2d 213, 219 (Tenn. Ct. App. 1997); *Simmons v. Foster*, 622 S.W.2d 838, 840 (Tenn. Ct. App. 1981).

A confidential relationship is "that relationship where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party . . . ." *Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973), *quoted in Kelley*, 96 S.W.3d at 197.

There are two sources of such confidential relationships: (1) "legal confidential relationships" and (2) "family and other relationships." *Matlock*, 902 S.W.2d at 385-86. A "legal confidential relationship" is "a fiduciary relationship . . . or any other relationship where the law prohibits gifts or dealing between the parties." *Id.* These "[f]iduciary relationships are confidential *per se* because of the legal status of the parties." *Kelley,* 96 S.W.3d at 197. An example of such a relationship includes attorney–client. *Roberts v. Chase*, 166 S.W.2d 641, 650 (Tenn. Ct. App. 1942). Thus, proof of a fiduciary relationship establishes the existence of a confidential relationship, but does not make out a *prima facie* claim of undue influence unless the contestant establishes an additional suspicious circumstance *Kelley*, at 197. "Family and other relationships" are not confidential *per se;* therefore, the contestants must prove the elements of domination and control in order to establish the

---

[3]"Thus in most cases, contestants establish undue influence by proving the existence of suspicious circumstances warranting the conclusion that the will was not the testator's free and independent act". *Kelley v. Johns*, 96 S.W.3d 189, 195 (Tenn. Ct. App. 2002).

[4]Such a confidential relationship need not involve a beneficiary, as undue influence may be exercised by one other than a beneficiary. *DeLapp v. Pratt*, 152 S.W.3d 530, 542 (Tenn. Ct. App. 2004); *Estate of Glasgow v. Whittum*, 106 S.W.3d 25, 31 (Tenn. Ct. App. 2002).

[5]The Contestants argue that a presumption of undue influence can arise even in the absence of a confidential relationship. (Brief of Appellee, p. 18 n.8). The greater weight of authority, however, requires a confidential relationship. *Moore v. Green*, No. M2000-03203-COA-R3-CV, 2004 WL 547008, at *5 (Tenn. Ct. App. Mar. 18, 2004); *Pendola v. Butler*, No. M2002-00131-COA-R3-CV, 2003 WL 21766257, at *5 (Tenn. Ct. App. July 31, 2003); *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 219 (Tenn. Ct. App. 1997); *Simmons v. Foster*, 622 S.W.2d 838, 840 (Tenn. Ct. App. 1981); *Askew v. Askew*, 619 S.W.2d 384, 386 (Tenn. Ct. App. 1981); *Parham v. Walker*, 568 S.W.2d 622, 624 (Tenn. Ct. App. 1978); 25 Am. Jur. 2d *Duress and Undue Influence* § 31 (1996); 95 C.J.S. *Wills* § 351 (2001).

existence of a confidential relationship. *Matlock*, at 385-86. The issue of whether a confidential relationship arose from a non-fiduciary relationship is an issue of fact. *Id.* at 385. Proof of "family and other relationships," alone, provides no support to an undue influence claim. *Kelley,* at 197. However, proof of such relationships coupled with proof of domination and control, does establish the existence of a confidential relationship, but does not make out a *prima facie* claim of undue influence unless an additional suspicious circumstance exists. *Id.*

Contestants argue that the Proponent engaged in the unauthorized practice of law by helping the Decedent draft her will and that this relationship was analogous to an attorney–client relationship to give rise to a confidential relationship as a matter of law. An actual attorney–client relationship is confidential *per se* "because of the legal status of the parties." *Kelley*, at 197. The attorney–client relationship is governed by legal rules, i.e., Rules of Professional Conduct, which focuses heightened scrutiny upon transactions among attorneys and their clients. Tenn. Sup. Ct. R. 8, RPC 1.8. This heightened scrutiny exists because attorneys' superior knowledge of the law is assumed to give them an unfair advantage when conducting business transactions with their clients.[6] In relationships arising from the unauthorized practice of law, the concern is different. The danger inherent in the unauthorized practice of law is not that the unauthorized practitioner will use superior legal knowledge to take advantage of a "client," but that the "client" will be harmed by the unauthorized practitioner's lack of knowledge.[7] Due to this lack of knowledge, the risk of asymmetric information does not exist to the same extent in relationships arising from the unauthorized practice of law as it does in attorney–client business transactions. Assuming *arguendo* that the Proponent engaged in the unauthorized practice of law by helping the Decedent draft her will, the relationship would not be confidential *per se*.

The Contestants also argue that the clergyman–parishioner relationship existed between the Proponent and the Decedent giving rise to a confidential relationship as a matter of law. Again, assuming *arguendo* that a clergyman–parishioner relationship existed between the Proponent and Decedent, such a relationship is not confidential *per se*. A clergyman–parishioner relationship gives rise to a confidential relationship only if there is sufficient proof. *See Mahunda v. Thomas*, 402

---

[6]The potential asymmetry of information between the parties in an attorney–client business transaction has long been the primary concern of the close scrutiny doctrine. *Hutchinson v. Crowder*, 8 Tenn. Civ. App. 114, 119 (1917) ("To sustain a transaction of advantage to himself with his client, the attorney has the burden of showing . . . that he gave his client all the **information and advice** which would have been his duty to give if he himself had not been interested . . . .") (emphasis added).

[7]*Haverty Furniture Co. v. Foust,* 124 S.W.2d 694, 697-98 (Tenn. 1939) (stating that "the fundamental purpose underlying the enactment of the laws regulating admission to the bar and the practice of the profession" is "to insure to the public the highest quality of service possible from those offering their services to the public for a consideration" by preventing "the public from being preyed upon by those who for a valuable consideration seek to perform services which require skill, training and character, without adequate qualifications").

S.W.2d 485, 489 (Tenn. Ct. App. 1965).[8] Determining whether a clergyman–parishioner relationship is a confidential relationship is an issue of fact requiring proof of domination and control. *See Matlock*, at 385-86.

Finally, Contestants argue that the Proponent and Decedent were close confidential friends; and therefore, their relationship was confidential *per se*. A close confidential friendship can form the basis of a confidential relationship. *Bayliss v. Williams*, 46 Tenn. (6 Cold.) 440, 441-42 (1869). However, even relationships as inherently confidential as family relationships are not confidential *per se*, but require proof of the elements of domination and control. *Kelley*, 96 S.W.3d at 197. A close confidential friendship must satisfy the elements of domination and control in order to establish the existence of a confidential relationship for purposes of the undue influence analysis.

Since Contestants failed to establish the existence of a "legal confidential relationship", the existence of a confidential relationship between Proponent and Decedent requires proof of the elements of domination and control. *Matlock*, 385-86. Domination and control is an issue of fact. Because the doctrine of undue influence is applicable only where there is a confidential relationship,[9] the Contestants are not entitled to summary judgment if there is any genuine disputed issues of material fact concerning the existence of a confidential relationship and the elements of domination and control.

While there is evidence supporting the Contestants' assertion that the Proponent had the ability to exercise dominion and control over the Decedent, there is additional evidence supporting the Proponent's assertion that there was no confidential relationship. The Proponent and Ms. Martinson testified that Decedent was independent and strong-willed, and that a Mona Updegraff was Decedent's pastor, rather than the Proponent. According to the Proponent, the Decedent told him how to fill in the blanks provided by the will software kit, and he only agreed to help her after she asked him several times. Proponent testified that he advised Decedent to tell her family about the new Will, and Decedent waited almost two months before executing the document at a bank in Gatlinburg, before witnesses that neither the Proponent nor Ms. Martinson knew. Proponent pointed out that he lived in Madison, Alabama and the Decedent lived in Gatlinburg, Tennessee, and the distance would diminish the Proponent's ability to exercise any dominion and control over the Decedent.

---

[8]In *Mahunda*, this Court concluded that there was insufficient proof to establish the existence of a confidential relationship between a clergyman and one of his parishioners. *Mahunda*, 402 S.W.2d at 489. Implicit in this reasoning is the conclusion that clergyman–parishioner relationships are not confidential *per se*; otherwise, proof of the clergyman–parishioner relationship alone would have been sufficient.

[9]*Keasler v. Estate of Keasler*, 973 S.W.2d 213, 219 (Tenn. Ct. App. 1997); *Simmons v. Foster*, 622 S.W.2d 838, 840 (Tenn. Ct. App. 1981); *Parham v. Walker*, 568 S.W.2d 622, 624 (Tenn. Ct. App. 1978).

Viewing the evidence in the light most favorable to the nonmoving party, the facts and conclusions to be drawn therefrom do not permit a reasonable person to reach only one conclusion regarding the existence of a confidential relationship. Thus, a genuine issue of material fact exists as to whether the Proponent exercised sufficient dominion and control to establish a confidential relationship. If "a genuine issue of fact remains for trial, or if there is doubt as to whether or not such genuine issue remains for trial, the summary judgment must be overruled." *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 347 (Tenn. Ct. App. 1999). We conclude the Contestants were not entitled to summary judgment regarding their undue influence claim.

Contestants further argue that Proponent engaged in the unauthorized practice of law by helping Decedent to draft her will and that this "constitutes an independent basis for rendering the Will a nullity and void both under the applicable case law and as a matter of public policy." (Brief of Appellees, p. 28). Contestants cite *Old Hickory Eng'g & Mach. Co. v. Henry*, 937 S.W.2d 782 (Tenn. 1996) for the proposition that documents prepared through the unauthorized practice of law are null and void. In *Old Hickory*, the Court held that a complaint signed by a non-lawyer was invalid because it did not satisfy the signature requirement in Tenn. R. Civ. Proc. 11. *Id.* at 785. The Court reasoned that Rule 11 "makes the signing of a pleading by an attorney of record or the party an essential condition to the validity of a pleading." *Id.* This case, however, involves a will, and there is no requirement making the involvement of an attorney an essential condition to the validity of a will.[10] Assuming *arguendo* that the Proponent engaged in the unauthorized practice of law by helping the Decedent to draft her will, this would not affect the validity of the purported will.

The final issue is whether the Trial Court erred in invalidating the entire Will. Our findings on the prior issues render this issue moot.

The grant of summary judgment by the Trial Court is vacated, and the cause remanded, with the cost of the appeal assessed to Dorothy Brevard, and the Estate of John Brevard.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[10]The essential conditions to the validity of an attested will are testamentary capacity and proper execution. Tenn. Code Ann. §§ 32-1-102, -104 (2006).