11 So.2d 361

## ROPER v. LENOIR et al.

### 5 Div. 371.

Supreme Court of Alabama.

Jan. 14, 1943.

Grady Reynolds and Reynolds & Reynolds, all of Clanton, for appellant.

584

Lawrence F. Gerald and Gerald & Gerald, all of Clanton, for appellees.

BOULDIN, Justice.

Appellant filed a bill in equity to cancel a deed of gift to real estate on the ground of insanity and undue influence.

The property consisted of 160 acres, the home owned and occupied by complainant, a widow, for many years. The deed was made to appellees, grandnieces of the grantor, who were then and still are minors. They were defended by guardian ad litem, appointed by the court.

The deed passed a present title to the fee, but reserved to the grantor the possession, use and enjoyment for her life. Since it passed a title inter vivos, stripping the grantor of the power to sell and convey the property in fee for her own purposes, we treat the transaction as a gift inter vivos in applying the rules of law touching undue influence. However, a deed passing present possession, rendering the grantor homeless, would smack of undue influence or insanity more strongly. The averment of undue influence reads: "Complainant avers and charges that the person or persons occupying the confidential relationship to your complainant, at the time of the execution of said deed and the person causing your complainant to execute said deed by reason of undue influence was your complainant's attorney at law, Honorable Percy M. Pitts, who was then and had been for several days prior thereto, representing your complainant as her attorney."

The law applicable to such transaction is well stated in Hutcheson v. Bibb, 142 Ala. 586, 38 So. 754, in these words: "In transactions inter vivos, where confidential relations exist between the parties, the law raises up the presumption of undue influence, and puts upon the donee, when the dominant party in the transaction, the burden of repelling such presumption by competent and satisfactory evidence; and this is usually done by showing that the grantor had the benefit of competent and independent advice of some disinterested third party."

It is not essential that the grantees should have personally had any connection with the transaction. If another, standing in confidential relation to the grantor in position to exert a dominant influence, employs such influence in behalf of another, however innocent, the result is the same, where the grantee parts with nothing, as in case of a gift. But all the facts should be considered in determining whether such influence was exerted, including the fact, if it be a fact, that the party charged with undue influence had no interest in causing the grantor to make a deed of gift, nor any interest in having it made to the grantees named therein. Unless some such interest be shown in the party charged with undue influence, the presumption of undue influence does not arise. It is his interest as donee, or in one in whose behalf he acts, which infects the transaction with suspicion, and raises the presumption. We have considered the evidence fully and carefully with all its reasonable implications. It would serve no good purpose to discuss it in detail. We deal with it only so far as to indicate the basis of our decision.

Complainant had an only daughter, who had been married when seventeen years of age. She and her husband had separated and been divorced. The daughter had been employed in Selma. Her mother visited her there on the last day of 1936. A day or two later she went to visit her mother in Chilton County. Her mother met her at the railway station with an automobile. After reaching the mother's home, it became known from newspaper reports that the daughter and her former husband had remarried. The mother became greatly enraged, both toward daughter and husband. He arrived presently, and the mother made an assault upon him with a gun. This led to her arrest and incarcer-

ation in jail in Clanton. Her niece, Mrs. Lenoir, mother of these grantees, went to Clanton to arrange for making a bond and getting complainant out of jail. She did not want to make a bond at once. The next day, Mr. Lenoir went with his wife on the same mission. Mr. Pitts, attorney for complainant in former matters, went with Mr. and Mrs. Lenoir to the jail. There he was employed to defend complainant on the criminal charge. During that interview, complainant, declaring the son-in-law should never have any control over her property, announced her determination to make the deed in question, gave her attorney data from which to draw the deed, had him prepare it, signed and acknowledged it before him, as notary, and delivered it to Mr. Lenoir with direction to file it of record, which was done. No evidence discloses any activity of either of the Lenoirs to procure the deed, nor do the circumstances justify any such conclusion. Mr. Lenoir while at the jail, did pay Mr. Pitts the fee he had named for defending the criminal charge. Complainant later repaid him for this outlay. The evidence supports no just conclusion that this transaction had to do with the making of the deed. The deed, we are convinced, was made of complainant's own accord, on her insistence, prompted by resentment and dislike for the son-in-law. Pitts influenced her in no way. On the contrary, he acted under her orders. His advice was neither sought nor given in this regard. She was the dominant party, ordered a deed drawn, and not a will, which might miscarry. The weight of the evidence discloses complainant had full knowledge of the transaction; that for more than two years the deed expressed her continuing purpose and intent; that finally better relations arose between the grantor, her daughter and son-in-law. Grantor then wished to sell the property and live with her daughter. A sale was negotiated, but the deed stood in the way of making title. In reality this suit is bottomed on a desire to revoke the gift. Unhappily for complainant, the law does not warrant such relief. It was the duty of the court to have these minor children represented by guardian ad litem to protect their legal rights.

We have carefully considered the evidence on the issue of mental capacity. What we have written indicates our conclusion on this issue. Whatever the exhibition of violent, uncontrolled temper at the time of the assault may import as to mental status at the moment, the resentment and hate entering into the making of this deed several days later cannot be given the stamp of mental incapacity. That complainant knew what she was doing, willed to do it, consummated it without anyone taking advantage of her in the premises, is our conclusion, indulging no presumption in favor of the finding of the trial court, the witnesses not being heard orally before him.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.