IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 3, 2002 Session

THE ESTATE OF ALLINE ELIZABETH GLASGOW,
CLARENCE E. BIGGS, ET AL. v. VIRGIL S. WHITTUM, ET AL.

Appeal from the Chancery Court, Probate Division for Sumner County
No. 2000P-12    C.L. Rogers, Chancellor

No. M2001-02263-COA-R3-CV - Filed December 19, 2002

Proponents appeal judgment of the trial court on a jury verdict against the Will on a finding of undue influence by the proponents upon the testatrix. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and J.S. DANIEL, SP. J., joined.

James Robin McKinney, Jr., Nashville, Tennessee, for the appellant, Virgil S. Whittum.

Paul T. Housch, Nashville, Tennessee, for the appellees, Clarence E. Biggs, Raymond Glasgow, Jr., R.B. Biggs, Richard Biggs, and William Ray Biggs.

**OPINION**

Alline Elizabeth Glasgow was married to Raymond Glasgow for 28 years prior to his death on February 24, 1999. No children were born to the marriage, but Alline Glasgow had five children by a previous marriage: Richard Biggs, R.B. Biggs, Willie Biggs, Clarence Biggs, and Norma Jean Biggs Whittum. Raymond Glasgow had one child by a previous marriage, Raymond Glasgow, Jr. The former husband of Alline Glasgow, Clarence E. Biggs, Jr., had a child by a previous marriage, Harold Biggs, who lived in Florida. Appellant, Norma Jean Biggs Whittum was married to Appellant Virgil Whittum. Alline Glasgow suffered from chronic lymphocytic leukemia, asthma, hypertension, and congestive heart failure. Following the death of Raymond Glasgow on February 24, 1999, Alline Glasgow moved to the home of Virgil and Norma Jean Whittum and, on March 3, 1999, Norma Jean Whittum called Attorney Robert Rutherford to set up an appointment for Alline Glasgow to make a will. At a meeting that same day between Robert Rutherford, Virgil Whittum and Alline Glasgow, a power of attorney was prepared whereby Virgil Whittum was to become attorney in fact for Alline Glasgow. Virgil Whittum then drove Alline Glasgow to a nearby funeral home where she executed the power of attorney. Mr. Rutherford's partner, Ralph DeMarco, actually

prepared the will from notes taken by Mr. Rutherford and, on March 16, 1999, Virgil Whittum escorted Alline Glasgow to the office of Mr. Rutherford where she executed a Last Will and Testament, devising all of her property to Norma Jean Whittum and naming Virgil Whittum as executor. Both Virgil Whittum and Norma Jean Whittum were aware of the contents of the will at the time it was executed by Alline Glasgow.

Alline Glasgow died November 4, 1999, and the will prepared by Attorneys Rutherford and DeMarco was offered for probate. Three of the brothers of Norma Jean Biggs Whittum contested the will and, following a three day jury trial, the trial judge directed a verdict for the proponents on all issues involving fraud and submitted the case to the jury on allegations of unsoundness of mind and undue influence. The jury returned a verdict in favor of the proponents on questions of unsoundness of mind, but returned a verdict against the will on issues of undue influence, thereby finding that the will was the product of undue influence by both Virgil Whittum and Norma Jean Biggs Whittum.

The trial court overruled the proponents' motion for a new trial and they timely appealed.

Appellants assert four issues on appeal:

      I.      Whether the Trial Court Erred in Correctly Charging the Jury on the Legal Standard of Undue Influence and Whether the Trial Court erred in Denying the Special Jury Request.

      II.      Whether the Trial Court Erred in Failing to Grant a Directed Verdict on Behalf of the Appellant, Virgil Whittum.

      III.      Whether the Trial Court Erred in Allowing the Rebuttal Testimony of L.Ralph DeMarco, Esquire.

      IV.      Whether there was Material Evidence to Support the Jury's Verdict.

As review in the Court of Appeals on issues II and IV asserted by Appellants involve only questions of law, it is well to recognize controlling law:

> In this case, only the plaintiff and the defendant testified concerning the facts of the accident. The Court of Appeals does not reweigh the evidence or reevaluate witness' credibility in an appeal from a jury verdict. *Grissom v. Metropolitan Gov't of Nashville*, 817 S.W.2d 679 (Tenn. App. 1991). This Court on appeal is required to take the strongest legitimate view of the evidence favoring the prevailing party, discard all contrary evidence, allow all reasonable inferences to uphold the jury's verdict and set aside the jury verdict only when there is no material evidence to support it. T.R.A.P. 13(d). *Smith County v. Eatherly*, 820 S.W.2d 366 (Tenn. App. 1991), *cert. denied*, __ U.S. __, 112 S.Ct. 1762, 118 L.Ed.2d 424 (1992); *Glover v. Oakwood Terrace Associated II*, 816 S.W.2d 43 (Tenn. App. 1991).

*Witter v. Nesbit*, 878 S.W.2d 116, 121 (Tenn. Ct. App. 1993).

Appellate review of the action of the trial court in declining to grant a motion for a directed verdict involves only a question of law. *Ingram v. Earthman*, 993 S.W.2d 611, 626 (Tenn. Ct. App. 1998) (appeal denied and rehearing of denial of appeal denied, certiorari denied, 528 U.S. 986, 120 S.Ct. 445, 145 L.Ed.2d 362).

Whether "material evidence" exists in the record sufficient to submit a case to the jury is likewise a question of law. *Cude v. Culberson*, 209 S.W.2d 506, 513 (Tenn. Ct. App. 1947).

This Court has held:
Of course, reviews under "preponderance of the evidence" and "material evidence" tests are not similar and, in fact, are poles apart. Under the preponderance of evidence test, the evidence is weighed by the reviewing Court on an evidentiary fact scale. Whichever side of the fact scale is heavier will be the finding of the Court. Where the review is on the test of "material evidence" no scale of evidence is used by the reviewing court. It is simply a search of the record to ascertain if material evidence is present to support the verdict. It matters not a whit where the weight or preponderance of the evidence lies under a material evidence review. The reviewing Court might well be of the opinion that the evidence preponderates heavily against the judgment below, but under a material evidence review, if material evidence is found to support the judgment, that is, evidence from which a trier of facts, if he were inclined to believe it, could reach the conclusion reached, then, the judgment based thereon must be affirmed. That is why a "material evidence" test is one of law; not of fact. To search for the presence of evidence is a task of law. To weigh evidence is a task of fact.

*Hohenberg Bros. Co. v. Missouri Pac. R. Co.*, 586 S.W.2d 117, 119-20 (Tenn. Ct. App. 1979).

The record in this case is replete with "material evidence" which would support a jury verdict on the undue influence issue whether that verdict had been for the contestants or the proponents. The jury verdict having been for the contestants and against the proponents and that verdict having been approved by the trial judge, we are without authority on appeal to disturb the verdict. T.R.A.P. 13(d).

In order for this Court to hold that no material evidence supported the verdict, or that Virgil Whittum was entitled to a directed verdict, we would have to hold that as a matter of law, Alline Glasgow received independent legal advice and that the power of attorney given to Virgil Whittum March 3, 1999 did not trigger a presumption of undue influence. The record does not support such findings. The record shows that it was Norma Jean Biggs Whittum who called Mr. Rutherford to arrange a will for Alline Glasgow. Mr. Rutherford had previously represented Virgil Whittum in other matters. The draft of the will not prepared by Rutherford but rather by DeMarco was sent not to Alline Glasgow but to Virgil Whittum who read the will to her. Attorney DeMarco gave no advice to Alline Glasgow and discussions between Robert Rutherford and Alline Glasgow were limited to a brief conference on March 3, 1999, when Virgil Whittum had brought Mrs. Glasgow to

his office and there obtained her power of attorney. Virgil Whittum used the power of attorney to sell the real estate belonging to Alline Glasgow at less than its appraised value and promptly deposited the proceeds of the sale in the joint bank account of Virgil Whittum and Norma Jean Biggs Whittum. These actions, while not conclusive, clearly triggered a charge to the jury as to the presumption of *Matlock v. Simpson*, 902 S.W.2d 384 (Tenn. 1985). While this case was pending on appeal the supreme court, on May 23, 2002, rendered its opinion in *Childress v. Currie*, 74 S.W.3d 324 (Tenn. 2002), restricting the scope of the *Matlock* presumption to exclude an unexercised power of attorney. The exclusion is inapplicable at bar since Virgil Whittum exercised the power of attorney to dispose of the major asset of Alline Glasgow and deposit the resulting proceeds in the joint account of Virgil and Norma Jean Whittum.

Said the Court:

> The issue of undue influence should "be decided by the application of sound principles and good sense to the facts of each case." *Id.* at 388 (quoting *Halle v. Summerfield*, 199 Tenn. 445, 454, 287 S.W.2d 57, 61 (1956)). A careful reading of *Matlock* and *Mitchell* shows that an unexercised power of attorney does not in and of itself create a confidential relationship and we clarify *Matlock* to the extent it suggests otherwise. The core definition of a confidential relationship requires proof of dominion and control. *Matlock*, 902 S.W.2d 15 385-86; *Mitchell*, 779 S.W.2d 384 at 389. When an unrestricted power of attorney is executed but has not yet been exercised, good sense dictates that there exists no dominion and control and therefore no confidential relationship based solely on the existence of the power of attorney. In *Matlock*, there was additional evidence of dominion and control based upon the attorney-client relationship and the personal execution by the attorney of the will and the power of attorney. *Matlock*, 902 S.W.2d at 385-86. In *Mitchell*, the niece acted as caretaker to her ailing uncle, chose an attorney for him, drove her uncle to the attorney's office where he signed the power of attorney and will in her van, and began exercising her power of attorney before her uncle's death. *Mitchell*, 779 S.W.2d at 386-87.

*Childress*, 74 S.W.2d at 329.

Virgil Whittum was therefore required to bring forth clear and convincing evidence to rebut the presumption of undue influence evidenced by the execution of the power of attorney and the subsequent use thereof to the benefit of Virgil and Norma Jean Biggs Whittum and to the detriment of Alline Glasgow.

Clearly, there is material evidence in the record to support the verdict of the jury and the trial court correctly denied a directed verdict to Virgil Whittum.

In their third issue, Appellants assert that the trial court abused its discretion in allowing the rebuttal testimony of Attorney L. Ralph DeMarco. The trial court did not abuse its discretion in allowing the testimony. Attorney Robert Rutherford had implied that Attorney L. Ralph DeMarco was present at his March 3, 1999 conference with Alline Glasgow. DeMarco, in the rebuttal testimony, asserted that the first time he had ever seen Mrs. Glasgow was at the execution of the will on March 16, 1999.

The trial court has wide discretion in allowing or disallowing rebuttal testimony. *Coates v. Thompson*, 666 S.W.2d 69, 76 (Tenn. Ct. App. 1983). Such discretionary action will not be disturbed on appeal in the absence of an abuse of discretion. *Johns v. Caldwell*, 601 S.W.2d 37 (Tenn. Ct. App. 1980).

The trial court did not abuse its discretion in allowing the rebuttal testimony of Mr. DeMarco.

Appellant complains of the correctness of the trial court charge to the jury on undue influence and of the refusal of the trial court to grant their special request for a jury instruction.

As to undue influence, the trial court charged the jury:

> In this action, the plaintiff, Clarence Biggs, R.B. Biggs and Richard Biggs have the burden of establishing, by a preponderance of the evidence, all of the facts necessary to prove unsound mind and undue influence by Norma Jean Whittum.
> The law does presume undue influence by Virgil Whittum, placing the burden of proof upon Virgil Whittum, as will be explained to you later in these instructions.
> The burden of proof regarding the claim of unsound mind and undue influence by Norma Jean Whittum requires the burden and use of the term "preponderance of the evidence." That means that amount of evidence that causes you to conclude that an allegation is probably true. . . .
> . . . .
> A will may not be enforced if it is brought by undue influence. Undue influence is the overcoming of the mind of the person making the will by acts or conduct of another person. Mere general influence of another person that does not effect the act of making the will is not undue influence. To be undue influence, the influence must amount to coercion that destroys the freedom of choice of the person making the will. It substitutes the wishes or desires of another person and compels the maker of the will to dispose of property in a way that would not have been done otherwise.
> In determining the issue of undue influence, you may consider, among other things, the following:
>> One, the terms of the will unduly benefit the chief beneficiary of the will.
>> Two, are the terms of the will different from the expressed intentions of the maker of the will.

Three, did the chief beneficiary's relationship to the person making the will give the beneficiary an opportunity to influence the terms of the will.

Did the mental and physical condition of the maker of the will allow the maker's freedom of choice to be overcome by the action of others.

Did the beneficiary of the will actively take part in determining the provisions of the will or in causing it to be executed or signed.

A confidential relationship exists whenever the trust and confidence of one person is placed in the honesty and faithfulness of another. If you find that a confidential relationship existed between the person making the will, Ms. Alline Glasgow and Norma Jean Whittum, and you further find that Norma Jean Whittum was active in causing the will to be made and unduly profited from it, there is presumption that the will was obtained by the undue influence of Norma Jean Whittum.

This type presumption may be overcome only if Norma Jean Whittum proves by clear and convincing evidence that the making of the will was not the result of undue influence.

As a matter of law, I further instruct you that this will is presumed to have been obtained by the undue influence of Virgil S. Whittum, due to the existence of the power of attorney granted by the decedent to Virgil S. Whittum.

Now, this type presumption may be overcome if it is shown by Virgil S. Whittum, by clear and convincing evidence, that the decedent received independent advice regarding the will's provisions from a disinterested person having full knowledge of the facts and/or clear and convincing evidence of the fairness of the transaction. That is fairness to the legal rights and true wishes of Alline Glasgow, the decedent.

To prove an issue by clear and convincing evidence, that party having that burden must clearly show that there's no serious or substantial doubt about the conclusions that the party is attempting to prove.

The charge, as given by the trial court, is a correct statement of the law of Tennessee. Appellants assert that since the power of attorney nominated Virgil Whittum as attorney in fact and the will left the bulk of the estate to Norma Jean Biggs Whittum, the power of attorney did not trigger the presumption of undue influence because Norma Jean Biggs Whittum did not hold the power of attorney. This assertion is based upon the erroneous assumption that undue influence must be exercised directly by the donee.

It is immaterial whether undue influence is exercised directly or indirectly. *Brown v. Cobb*, 53 N.M. 169, 172, 204 P.2d 264, 266 (1949). In determining whether undue influence is present, a central focus is on the means used and the effect upon the donor. *See McElhinney v. Kelly*, 67 N.M. 399, 404, 356 P.2d 113, 116 (1960) ("It is not the nature and extent of the influence, but its effect upon the mind of the testator which determines whether it is undue influence.") (quoting 1

William J. Bowe & Douglas H. Parker, *Page on Wills* § 15.6 at 724); *In re Estate of Gonzales*, 108 N.M. at 586, 775 P.2d at 1303 (ultimate issue is effect of influence on donor). The underlying theory of the doctrine is that the donor is induced by various means to execute an instrument that, in reality, is the will of another substituted for that of the donor. *In re Will of Ferrill*, 97 N.M. at 398,. 640 P.2d at 504 (Sutin, J., specially concurring). We specifically reject the contention that a beneficiary must be the one who exerts the undue influence.

*Montoya v. Torres*, 823 P.2d 905, 909-10 (N.M. 1991).

In a similar context, it has been held:

> We next consider whether the contract between the Kennedys and Thomsen can be set aside on the basis of the undue influence of Francis Petersen. Undue influence by a third person renders a transaction voidable at the instance of the victim of the undue influence if the other contracting party had reason to know of the undue influence. *See* Restatement Contracts (Second) §§ 164 (comment *e*), 177 (comment *c*) (1981). In the present case the trial court found that Kennedys had reason to know of the undue influence practiced on Thomsen by Francis Petersen.

*Kennedy v. Thomsen*, 320 N.W.2d 657, 659 (Iowa App. 1982).

As observed by the Supreme Court of Alabama:

> It is not essential that the grantees should have personally had any connection with the transaction. If another, standing in confidential relation to the grantor in position to exert a dominant influence, employs such influence in behalf of another, however innocent, the result is the same, where the grantee parts with nothing, as in case of a gift.

*Roper v. Lenoir*, 11 So.2d 361, 362 (Ala. 1943).

*See also* Restatement Contracts (2d) §§ 164, 177.

Aside from the fact that the charge as given by the trial judge provided that mere influence was not sufficient to vitiate the will, the difficulty with the special request relative to the right to fair argument and persuasion in order to induce a will is that no evidence appears in the record of any such persuasive efforts by Norma Jean Biggs Whittum. She testified:

> Q. Now, your mother, when your father died, your stepfather, you and Virgil took control of your mother's affairs, didn't you?
> A. Virgil took control of my mother's affairs. I told Mama that I didn't want to have anything to do with it, because I knowed how the boys was, and she said

I don't want you being involved in it, because you've got enough just to take care of me.

Q. And you believed, and you witnessed and you saw your husband, Virgil, take over your mother's affairs.

A. I saw him do what my mother asked him to do.

Q. Now, when your stepfather died and your mother started living with you, you started receiving $200 a week from her; is that not right?

A. That is true, but that money - - wait just a minute. That money was used for pads, groceries, her juices and special things that she wanted to eat.

. . . .

Q. Now, when she died, you knew about the will, didn't you?

A. When she died, yeah, Virgil went and got it.

Q. In fact, within three weeks after she made the Will, you knew about the Will?

A. I knew it was a Will, but I did not know what was in the Will. I told her that I did not want to know what was in it.

Q. Well, do you remember your husband testifying yesterday that there was this suitcase, that he had a briefcase and that he had the Will in there and that he read it to her?

A. Yeah, but I wasn't there.

Q. Okay. So you didn't want to look at the Will or have anything to do with the Will because you knew you were in the Will, didn't you, ma'am?

A. I didn't want to have anything to do with it. I didn't care anything about it. All I cared about was taking care of my mother and other responsibilities that I had.

The charge to the jury was a clear and correct statement of the law of Tennessee which fairly defines the legal issues involved in this case and does not mislead the jury. *See Otis v. Cambridge Mutual Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992).

The denial of the special request was not error.

The case was fairly tried on issues of material fact and the jury properly charged. The jury could have found either way on the issue of undue influence and their verdict, approved by the trial judge, would withstand appellate challenge. The judgment of the trial court is in all respects affirmed and the case is remanded for such further proceedings as may be necessary.

Costs of the cause are assessed against Appellants.

_____
WILLIAM B. CAIN, JUDGE