James C. SMITH, et al.

v.

Barry A. GREGORY, et al.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Aug. 17, 2007 Session.

Nov. 6, 2007.

Permission to Appeal Denied by Supreme Court April 14, 2008.

---

L. Lee Kull, Maryville, Tennessee, for the Appellants, James C. Smith, Robert L. Smith, and William D. Smith.

Albert J. Harb and Matthew A. Birdwell, Knoxville, Tennessee, for the Appellees, Barry A. Gregory, Billy G. Gregory, and Estelle A. Gregory.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

This is an action to void a tax sale. Plaintiffs are brothers who jointly own property in Blount and Knox counties which they inherited after the death of their mother. Plaintiffs neither obtained new deeds to reflect their ownership of the property nor did they notify the appropriate property assessors' offices that they were now responsible for the payment of property taxes. Instead, Plaintiffs' deceased parents remained the record owners of both parcels for many years after their deaths. After taxes on the Blount County property went unpaid for two years, Blount County filed suit to sell the property for delinquent taxes and issued summonses for the record owners of the Blount County property. A process server attempted service at the address listed for the record owners of the Blount County property, which was the Knox County property. After many unsuccessful attempts, the process server returned the summonses "not to be found in my county." Blount County then published notice of the tax sale in a local newspaper as constructive notice to the record owners of the property. The property was purchased at the tax sale by Barry A. Gregory, who then deeded it to his parents. After the one-year statutory redemption period passed, Mr. Gregory

contacted one of the plaintiffs to demand possession of the property. Plaintiffs then sued Mr. Gregory and his parents to void the tax sale. Plaintiffs claimed that the process server did not use due diligence in attempting to serve the owners of the property with notice of the tax sale and, therefore, their due process rights were violated. Plaintiffs also asserted that the Trial Court improperly took judicial notice of and relied upon letters allegedly sent by Blount County after the tax sale was held. We find that the process server used due diligence in attempting to serve the owners with notice of the tax suit and, therefore, Plaintiffs' constitutional rights were not violated by the tax sale. Our decision regarding service of process pretermits our consideration of the issues raised regarding the post-sale letters. We affirm.

## I. Background

In this action to void a tax sale, Plaintiffs argue they were not provided with notice of the sale before their property was sold. Plaintiffs, James C. Smith, Robert L. Smith, and William D. Smith (the "Smiths"), are the adult sons of the late Robert and Ruth Smith (the "Decedents"). The Decedents owned property in Blount County in the Choto Hills subdivision (the "Choto Hills Property") and property in Knox County on Ponder Road (the "Ponder Road Property"). The Decedents resided at the Ponder Road Property. William Smith moved in with them in 1991. Robert Smith died in 1991, and Ruth Smith passed away in 1995. Ruth Smith's will was probated in Knox County, and the

Smiths were her heirs. Although testimony shows that the Smiths had legal advice at the time of the probate action, they never obtained deeds conveying the Choto Hills Property or the Ponder Road Property to themselves as provided for in Ruth Smith's distribution of her estate. William Smith continued to reside at the Ponder Road Property, although he frequently traveled out of state for business and to visit family members.

On March 11, 2003, the Choto Hills Property was sold at a Blount County tax sale to recover unpaid taxes from the year 2000. Barry A. Gregory purchased the Choto Hills Property at the tax sale, and then conveyed it to his parents, Billy and Estelle Gregory, as a gift. Barry Gregory paid the 2002 and 2003 property taxes on the Choto Hills Property and allowed the tax receipt, which did not identify the person who had paid the taxes, to continue to be sent to the Ponder Road Property, which was the address of record for the Decedents. After the one-year redemption period [1] had passed, Barry Gregory called the phone number listed for the Decedents and informed William Smith that he had purchased the Choto Hills Property and wanted possession.

Shortly thereafter, the Smiths filed a Complaint to Set Aside and Invalidate Tax Sale and Deed against Barry Gregory. The complaint was amended to include Billy and Estelle Gregory as defendants after the Smiths learned of the deed conveying the Choto Hills Property to them.[2] As a basis for their cause of action, the Smiths asserted that they did not receive

1. Tennessee Code Ann. § 67–5–2701, *et seq.*, provides a procedure by which the owner of the property and certain other persons who have an interest in the property may redeem the property within one year from the date of the tax sale by paying the purchase price plus interest.

2. For ease of reference, we will refer to the defendants, Barry, Billy, and Estelle Gregory, collectively as the "Gregorys."

notice of the tax sale. They averred that even though William Smith resided at the Ponder Road Property, the Return of Service incorrectly stated that no one lived at that address. Furthermore, no notice was sent to either the Ponder Road Property or the Choto Hills Property by certified or registered mail. Notice of the pending tax sale was published in a Blount County ·newspaper, but the Smiths maintain that notice by publication did not satisfy their due process rights under the facts of this case.

At trial, the Gregorys moved for a directed verdict following the close of the Smiths' proof. The Trial Court granted this motion and entered judgment in favor of the Gregorys. The Smiths appeal.

## II. Discussion

The Smiths present four issues on appeal, which we restate as follows:

1. Whether the Trial Court erred in holding that the process server acted with due diligence in attempting to perfect actual service and notice to the owners of the Choto Hills Property.

2. Whether the Trial Court erred in holding that the process server made an accurate, truthful, and credible return that the property owners could not be found in his county.

3. Whether the Trial Court erred in taking judicial notice of letters regarding the completed tax sale that allegedly were sent to the property owners by the court clerk, after the tax sale, when such letters were not entered into evidence and there was no proof that the letters had been properly addressed and mailed with adequate postage.

4. Whether the Trial Court erred in implicitly holding by taking judicial notice that such letters regarding the tax sale, which allegedly were sent after the tax sale, constituted actual adequate notice of a pending tax sale, especially given the fact that the owner occupying the property, in the meantime, had received notice that the property taxes had been paid.

In a non-jury case such as this one, we review the record de novo with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R.App. P. 13(d); Bogan v. Bogan, 60 S.W.3d 721, 727 (Tenn.2001). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. Seals v. England/Corsair Upholstery Mfg. Co., Inc., 984 S.W.2d 912, 915 (Tenn.1999).

A trial court's conclusions of law, such as its decision to grant a motion for directed verdict, are subject to a de novo review with no presumption of correctness. S. Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001); Estate of Glasgow v. Whittum, 106 S.W.3d 25, 28 (Tenn.Ct.App.2002). As our Supreme Court has instructed:

In ruling on a motion for directed verdict, trial courts must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. Eaton v. McLain, 891 S.W.2d 587, 590 (Tenn.1994). A court may grant the motion only if reasonable minds could reach only one conclusion from the evidence. Id. Appellate courts apply the same standard in reviewing the trial court's decision on a directed verdict. Sauls v. Evans, 635 S.W.2d 377, 379 (Tenn.1982).

*Gaston v. Tennessee Farmers Mut. Ins. Co.,* 120 S.W.3d 815, 819 (Tenn.2003).

### A. Process Server

■ The first two issues raised by the Smiths address the actions of the process server who attempted to serve summonses regarding the delinquent tax suit and upcoming tax sale. Blount County actually issued two summonses regarding the Choto Hills Property—one to Robert and Ruth Smith, and another for Ruth Smith. The summonses were issued on June 27, 2002, and returned unserved on July 11, 2002, with the notation "not to be found in my county." In the margin of the summons for Robert and Ruth Smith was a handwritten comment, "no one living at this address," and a similar comment, "no one living there," on the summons for Ruth Smith. Blount County then published notice of the tax sale in *The Daily Times,* a newspaper of general circulation in Blount County.

State law provides as follows regarding notice of a tax suit to the property owner:

(a) The defendant, when served in any manner according to the Rules of Civil Procedure, either by mail or in person, does not have to be served with a copy of the complaint and exhibit and instead, the clerk may issue a notice to accompany the summons.

(b) The notice shall identify the suit mentioned in the summons sufficiently to enable the taxpayer to know what delinquent taxes the taxpayer is being sued for and what property is subject to the lien.

\* \* \*

(d) Constructive service of process shall be made as now provided by law.

(e) In all counties, personal service of process on the defendant may be dispensed with and the summons and no-tice may be sent by certified or registered mail, return receipt requested.

Tenn.Code Ann. § 67–5–2415. It is undisputed that Blount County did not attempt to serve the record owners of the Choto Hills Property by certified or registered mail. Therefore, the adequacy of the notice regarding the tax sale depends upon whether Blount County complied with Tenn.Code Ann. § 21–1–203, which sets forth the circumstances in which constructive service by publication is permitted, including a situation "[w]hen the sheriff shall make return upon any leading process that the defendant is not to be found." Tenn.Code Ann. § 21–1–203(a)(3). The Tennessee Supreme Court has held that "[s]ubsection 21–1–203(a)(3) is satisfied only when the sheriff has used 'due diligence' in making a return that the defendant is not to be found." *Wilson v. Blount County,* 207 S.W.3d 741, 746 (Tenn.2006). Furthermore, the United States Supreme Court has stated as follows regarding notice in the context of a litigant's due process rights:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). We must decide whether the Trial Court erred in its decision that the efforts of the process server, Deputy Samuel Valentine, were sufficient to justify notice by publication after Deputy Valentine concluded that the Decedents were not to be found at the Ponder Road Property. The Trial Court found that Deputy Valentine made reasonable efforts to locate the Decedents, stating as follows:

The Court finds that an officer of the law who was familiar with the area, who was familiar with the Plaintiff, the parents of the Plaintiffs in this case, having actually gone through tax sales before, a tax sale before, acted reasonably under the circumstances in connection with his inquiry as to whether or not personal service of process could be perfected on the record owners of the real property in question. Having done that, the officer made an accurate and truthful and credible return that the record owners of the property could not be found in his county.

Deputy Valentine testified that he received the summonses for the Decedents, the record owners of the Choto Hills Property, on June 27, 2002. Deputy Valentine said he was familiar with the area because he lived a few miles from the Choto Hills Property, and because he had been called upon to serve summonses for an earlier tax sale at that address in 1999. Deputy Valentine stated that the return on the 1999 summonses also was "not to be found in my county." The Smiths concede that the Choto Hills Property was sold at a tax sale in 2000 and that it was redeemed by William Smith before title transferred to the purchaser. Deputy Valentine described his efforts to locate the Decedents to serve the summonses in 2002 as follows:

Q. Tell me how you made those efforts to find [the Decedents].

A. Physically drove there in my vehicle, went to the front door and rang the doorbell, knocked on the front door on numerous occasions.

Q. Any answers?

A. No, sir . . . .

Q. Now, did you do anything other than knock on the front door?

A. Uhm [sic], I looked in the front windows. They had some shear [sic] curtains, so I looked through the front window to see if there was furniture in there, which there was. I looked in the back yard [sic]. I didn't go to the back door, but I looked in the back yard [sic] to see if maybe they were sitting outside around back, and no one was there.

Deputy Valentine stated that when he looked in the windows, he saw boxes stacked up so that "it looked like you couldn't sit on the furniture or hardly walk through." He stated that as far as he could tell, it was the same furniture he had seen in that room in 1999 and was arranged the same way. Deputy Valentine stated that he never saw anyone in the room, but he sometimes saw a light on in the house after dark.

Although Deputy Valentine had some difficulty distinguishing his actions in 1999 from those in 2002, he stated that he spoke with a neighbor and also a meter reader in 1999 in an effort to discern whether there was anyone living at the Ponder Road Property. In 2002, Deputy Valentine admitted that he did not speak with any of the next-door neighbors, although he did meet a person who was mowing the yard at the Ponder Road Property. On cross-examination, Deputy Valentine described his encounter with that man as follows:

Q. All right. Now, you said you talked to someone cutting the grass?

A. Yes, sir.

Q. Now, you didn't get that person's name?

A. No, sir, I didn't.

Q. You didn't get that person's address?

A. No, sir, I didn't.

Q. You didn't ask that person if anybody was living there?

A. I don't remember for sure. I don't think I did. I think I may have. I'm not sure, to be truthful with you. I

think I did ask him if he lived there, and he told me no, he was a neighbor.

Deputy Valentine testified that he neither asked the man mowing the grass who was paying him for his services nor did he look up a phone number for the Decedents and try to call them.

Deputy Valentine did not keep the summonses for the full thirty days that he was permitted to do so. However, he stated that he visited the Ponder Road Property numerous times in the two weeks during which he attempted to serve the summonses. Deputy Valentine lived near the Ponder Road Property in 2002, and he stated that he sometimes passed by there on his way to or from his house. Regarding the number of times he attempted to serve process on the Decedents, Deputy Valentine testified as follows:

Q. How many times—if you lived—if that was on your way home, how many times do you believe that you went out there between the time period of June 27, 2002, and July 11, of 2002?

A. Well, it would be a pure guess.

Q. Your best estimate.

A. Probably 12 to 15 times, maybe 17 times.

Q. At different times of the day?

A. Yes, sir.

William Smith testified that he visited family in California and Utah during June of 2002 and might also have been away during part of July 2002 as well. This was the time period when Deputy Valentine attempted to serve the summonses at the Ponder Road Property. However, the Smiths assert that Deputy Valentine should have done more to attempt to serve process on the Decedents before returning the summonses "not to be found in my county." It is this return of "not to be found in my county" which Blount County relies on as its authority to publish notice of the tax sale in the newspaper.

The Smiths rely on this Court's unpublished opinion in *Wilson v. Blount County*, No. E2004–02593–COA–R3–CV, 2005 WL 3038643 (Tenn. Ct.App. E.S., filed Nov. 14, 2005), *aff'd*, 207 S.W.3d 741 (Tenn.2006), as support for this proposition. However, because our Supreme Court granted an appeal, *see Wilson v. Blount County*, 207 S.W.3d 741 (Tenn.2006), we are bound by the Supreme Court's opinion. In *Wilson*, Blount County issued two summonses to a property owner, Mr. Wilson. *Wilson*, 207 S.W.3d at 744. The process server sent a letter by regular mail, which did not include a copy of either the summonses or the notice of the tax sale, to Mr. Wilson's post office box as that was the address Mr. Wilson had provided to the Blount County Property Assessor for tax notices. *Id.* The letter stated that "legal process in reference to delinquent property taxes has been issued" requiring personal service of a summons or other writ. The letter further stated that Mr. Wilson had ten days from the date of the letter to pick up a copy of the legal process at the sheriff's department in order to avoid a deputy sheriff serving him at home or work. *Id.* Mr. Wilson did not pick up the summons, and the letter was not returned to the sheriff's department. *Id.* The sheriff's deputy who handled the process for this summons testified that when a letter is not returned and the person does not appear to collect the summons, he usually searched the telephone directory, and he was sure he followed the same procedure for Mr. Wilson's summonses. *Id.* at 744–45. However, Mr. Wilson was not listed in the telephone book. The deputy then returned the summons to the clerk's office with the notation "DILIGENT SEARCH MADE AND NOT TO BE FOUND IN MY COUNTY." *Id.* at 745. Notice by publication then was made, following which default judgment

was taken against Mr. Wilson, and the Trial Court confirmed the sale of his property. *Id.*

On appeal, we reversed the Trial Court's ruling that the process server had acted properly in attempting to serve Mr. Wilson's summonses. *Wilson,* 2005 WL 3038643, at *6. The Tennessee Supreme Court affirmed our ruling, stating that the sheriff's deputy was required to use "due diligence" in attempting to serve the summonses on Mr. Wilson. *Wilson,* 207 S.W.3d at 746. The Supreme Court continued:

> In this case, due diligence required that the Blount County Sheriff's Department do more than a cursory search through the telephone directory. Just because a person is not to be found in the telephone directory does not mean that the person is not to be found. Captain Mercks could have checked the tax records for a physical address, or he could have provided service by mail at Wilson's post office address. We hold that when the sheriff has a mailing address for a defendant, which the sheriff does not know to be incorrect, due diligence requires that—at the least—the sheriff attempt to provide service by registered or certified mail that conforms with Tennessee Code Annotated section 67–5–2415.

*Id.* at 747.

Because of numerous factual distinctions in the two cases, we do not agree that *Wilson* requires a favorable outcome for the Smiths. In *Wilson,* the deputy sheriff did not have a street address for the record owner of the property, only a post office box. He sent a single letter by regular mail, and when the owner did not arrive to collect the summons, the deputy searched the telephone book for a listing and found none. The deputy then returned the summons to the clerk's office,

indicating that the property owner was not to be found. Beyond looking at the telephone directory, the deputy sheriff made no effort to identify an address at which the owner might be personally served.

This is very different from the situation faced by Deputy Valentine, who knew the street address of the record property owners and repeatedly went to that location in an effort to serve the Decedents. While it is true that Deputy Valentine could have done more by speaking with neighbors, questioning the man who mowed the lawn in greater depth, or leaving his card at the residence for someone to find if they returned to the home, we do not find that any of these actions were necessary to satisfy the requirement of "due diligence." *Wilson* does not hold that due diligence requires that every possible step to locate the property owner must be undertaken.

We agree with the Trial Court's assessment that the Smiths are the authors of their own misfortune. Many years after the deaths of their parents and even after the property had once before been sold at a tax sale, the Smiths still had not recorded deeds showing their new ownership of the Ponder Road Property and the Choto Hills Property. Further, the Smiths had not notified the property assessor's office that they were now responsible for payment of the property taxes. The Smiths, on more than one occasion, waited two or three years before paying their property taxes, doing so even after the Choto Hills Property was sold once at an earlier tax sale and then redeemed by William Smith in 2000. Furthermore, all of the utilities were still listed in the names of the Decedents. The home telephone at the Ponder Road Property was listed in the Decedents' names, and William Smith testified that he just forwarded calls from that number to his cell phone when he was traveling, which occurred quite frequently.

Given the Trial Court's credibility determinations and taking all of the evidence into account, we hold the Trial Court did not err in finding that Deputy Valentine made a diligent effort to serve process on the owners of the Choto Hills Property, and we find no violation of the Smiths' due process rights because of Deputy Valentine's actions or the constructive notice provided by Blount County after personal service on the property owners was unsuccessful. Therefore, we affirm the Trial Court's rulings on the issues of service, notice, and the due diligence requirement.

### B.   Post–Sale Letters

The Smiths raise two additional issues regarding letters allegedly sent by Blount County to the Decedents following the tax sale. Because we have held that the Trial Court did not err in its decision that Blount County provided adequate and constitutional notice of the tax sale before it occurred, we need not reach the remaining issues about any post-sale notices.

### III.   Conclusion

After careful review, we affirm the Trial Court's grant of a directed verdict in favor of the Gregorys and remand to the Trial Court for further proceedings consistent with this Opinion. Costs on appeal are taxed against the Appellants, James C. Smith, Robert L. Smith, and William D. Smith, and their surety.