# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 20, 2011 Session

## IN RE ESTATE OF HOMER P. NORTON

**Appeal from the Circuit Court for Sevier County**
**No. 2009-0937      Hon. Ben W. Hooper, II, Judge**

_____

**No. E2010-02304-COA-R3-CV-FILED-FEBRUARY 23, 2012**

_____

This lawsuit was filed by the decedent's nephew and the nephew's wife alleging that the caretakers of the decedent improperly influenced him to change his will. The proponents of the decedent's will filed a motion for summary judgment, asserting that no confidential relationship existed between the decedent and the caretakers in regard to the will. The trial court granted the proponents' motion, finding that proof of a confidential relationship was necessary to pursue a will contest on the ground of undue influence, and that no such confidential relationship existed between decedent and the caretakers. The contestants appeal. Finding no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

G. Kevin Hardin, Knoxville, Tennessee, for the appellants, George C. Norton and Teresa R. Norton.

Dale C. Allen and Luis C. Bustamante, Knoxville, Tennessee, for the appellees, Barbara W. Boots, Personal Representative; Jimmy Carl Norton, Robert Norton, Clerlinda Mynatt, Joan Hill, Personal Representative of the Estate of L.C. "Jack" Hill; John Wesley Hill, First Methodist Church of Sevierville, Tennessee.

**OPINION**

## I. BACKGROUND

This appeal involves a will contest. Contestant George C. Norton ("GCN") is an heir of Homer P. Norton ("Decedent"), who died on April 22, 2009, leaving a will dated December 18, 2007. In his will, Decedent left all his stock in Citizens National Bank ("Citizens") and half his residuary estate to GCN's brothers, Jimmy Carl and Robert Norton, and his sister, Clerlinda Norton Mynatt; the balance of the residuary estate was left to his late wife's brother and two of her nieces and nephews[1] (collectively, "Proponents"). Decedent left a life estate in a farm in Blount County to GCN, with the remainder interest to the residuary beneficiaries.

GCN contends that Decedent intended for him to inherit the estate and that he would have inherited it if the last will was declared invalid, as he was a beneficiary of the January 29, 2004, May 25, 2005,[2] and July 26, 2005 wills of Decedent. Contestant Teresa R. Norton ("TRN"), GCN's wife, asserts that she was a residuary beneficiary of wills dated May 25 and July 26, 2005. GCN and TRN (collectively, "Contestants") claim that they enjoyed a long and loving relationship with Decedent. They note that for years, they would visit with Decedent and his wife practically every Sunday and holidays. GCN claims that Decedent was "like a daddy" to him and favored him in every way. TRN notes that she helped Decedent's wife and the Decedent at any time during the week if asked. In regard to Decedent's farm, GCN relates that he cared for it, paid a number of expenses out of pocket to maintain it, and performed all the labor for free. According to Contestants, until two days before the death of Decedent's wife, GCN's brothers and sister rarely visited.

Contestants allege that the 2007 will is invalid because it was the product of undue influence allegedly exercised over Decedent by caretakers Tina Panaro Gergurich, Carolyn Reagan, Wanda Ramsey, and Diane Baker. According to GCN, the caretakers "seemed [like] they didn't want us around." He claims that the caretakers took away Decedent's "independence and privacy." TRN asserts that the caretakers, especially Gergurich, "said things about [her] that were not true." She relates that she was accused of calling health department officials regarding the quality of care being provided by the caretakers, inquiring about Decedent's finances at the bank, and generally meddling in Decedent's affairs.

---

[1]The approximate amount of the estate available for distribution is $5,360,845.14.

[2]Decedent's will dated May 25, 2005, provided that 80% of his estate would go to GCN and 20% to TRN (at the time, not yet GCN's wife).

On April 6, 2010, Proponents filed a motion for summary judgment asserting (1) that Contestants could not establish an essential element of their claim at trial, and (2) that Proponents had affirmatively negated an essential element of the non-moving party's claim. Specifically, Proponents asserted that Contestants were unable to establish that there was a confidential relationship between the Decedent and any other person and that Proponents had affirmatively negated Contestants' claims to that effect.

To substantiate their claim of undue influence, Contestants presented the affidavits of other caretakers who had worked in Decedent's home. Louray Tipton testified that when she worked for Decedent, Gergurich would kiss and rub on Decedent, who greatly enjoyed the attention. Ms. Tipton observed that Decedent would not talk to her after Gergurich arrived for work. She noted that Decedent would call Gergurich at home. According to Ms. Tipton, Gergurich stopped TRN from taking Decedent to medical appointments as had been the previous practice. She noted that Gergurich and TRN engaged in arguments. It was Ms. Tipton's opinion that Gergurich's influence and control over Decedent resulted in a complete change of the relationship between Contestants (particularly TRN) and Decedent. Ms. Tipton further accused Baker of engaging in activities to arouse Decedent and opined that Decedent also had an emotional attachment to Baker. According to Ms. Tipton, Decedent loaned money to Baker. Ms. Tipton testified that Decedent was not receptive to her complaints about the poor care being given to his wife.

In another affidavit, caretaker Betty R. Sands described threatening treatment of Decedent's wife by Gergurich. She observed that Gergurich, in front of Decedent's wife, would flirt with Decedent by sitting in his lap, rubbing his head, shoulders, back and body, and smile and banter with him. She opined that Decedent and his wife treated GCN and TRN as if they were their own children. Ms. Sands stated that she never saw any of GCN's siblings visit and related that Decedent told her, "They don't ever come around." According to Ms. Sands, she was fired by Gergurich after she administered CPR to Decedent's wife and took her to the hospital. Decedent's wife died shortly thereafter.

Connie Adams, another caretaker, testified by affidavit that Reagan would almost choke Decedent's wife when feeding her, and would talk to wife using a hateful tone and demeaning manner. She observed that Reagan gave unprescribed dosages of medications and poured wife's protein shakes down the drain. Ms. Adams stated that Decedent would not listen to her concerns about Reagan. She opined that Decedent had an emotional attachment to Reagan and that Reagan had Decedent "wrapped around her little finger." Ms. Adams observed that Decedent was very proud of GCN and thought of him as a son.

Proponents presented affidavits from individuals who had known and worked with Decedent in personal and business matters for many years who confirmed that he was a

competent, engaged businessman up to the end of his life. Contestants likewise admitted that Decedent was responsible, independent minded, in control of his own affairs, and capable of making his own decisions. They acknowledged that Decedent's competence and independence were exhibited by the fact that from the creation of Citizens, he was a bank director who regularly attended Board meetings until the month of his death. Contestants further noted that Decedent had access to independent professional advisors and attorneys who assisted him in the consideration and preparation of a revised estate plan during the final years before his death. David Verble, the President and Chief Executive Officer of Citizens, who had known Decedent for more than 30 years, recalled that Decedent came to him regarding his estate concerns. In order to best guide Decedent, Mr. Verble thereafter introduced him to Jim Shelby and Daniel Carter, employees and trust officers of the Trust Company in Knoxville in March 2007. Mr. Shelby testified that Decedent "wished to alter his estate plan to limit gifts and bequests to [GCN] because of his concern that all of his assets could pass outside the Norton family." Mr. Carter recalled that Decedent "expressed concerns with his then existing estate plan because under the plan all of his assets were to pass to his nephew, [GCN], and he was concerned that at [GCN]'s death a majority of [Decedent's] estate would pass to [TRN] . . . and as such, the assets for which [Decedent] had worked a lifetime to establish would pass outside the Norton family."[3] Mr. Shelby and Mr. Carter related that they both counseled with Decedent and ensured that he had access to an independent attorney, Dale Allen, who would revise his estate plan pursuant to his wishes. In fact, Mr. Shelby noted that he met with Decedent three times. In June 2007, Decedent also met with attorney Randy Sykes of the Sevierville Bar, for the purpose of changing his power of attorney, as he had appointed GCN his attorney-in-fact for business affairs in May 2005, July 2005, and October 2006. Mr. Verble and Janice Whaley, a longtime Citizen's employee, noted that Decedent expressed to them the desire to remove GCN as his attorney-in-fact because he felt both GCN and TRN[4] were interfering in his personal business. Ms. Whaley subsequently served as Decedent's attorney-in-fact until his death. According to Ms. Whaley, as Decedent's attorney-in-fact, she consulted and conferred with him many times regarding his business and personal affairs. Based on her weekly communications and meetings with Decedent, Ms. Whaley opined that he remained competent during his lifetime and did not appear to be subject to the influence or control of any other person.

On September 29, 2010, the trial court entered an order granting Proponents' motion for summary judgment, holding that as a matter of law, proof of a confidential relationship was necessary to pursue a will contest on the ground of undue influence. The court held that

---

[3]TRN is approximately 24.5 years younger than GCN, thus it would be reasonable for Decedent to expect that TRN would survive her husband.

[4]TRN had been an attorney-in-fact from May 2005 until October 2006.

no such confidential relationship existed "between Decedent and anyone else." As a result, the trial court declared that the Decedent's will dated December 18, 2007, was valid. Contestants perfected this appeal.

## II. ISSUES

The issues presented by the Contestants are restated as follows:

1. Whether the trial court erred as a matter of law in granting summary judgment in favor of the Proponents finding that proof of a confidential relationship is a prerequisite to the pursuit of a will contest on the grounds of undue influence.

2. Whether the trial court erred in determining that no confidential relationship existed between Decedent and any other persons such that the December 18, 2007 will admitted to probate was not the Decedent's free and independent act.

## III. STANDARD OF REVIEW

Our Supreme Court in *Giggers v. Memphis Housing Authority*, 277 S.W.3d 359 (Tenn. 2009), reviewed this state's summary judgment standard:

The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id.* at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the

-5-

nonmovant's claim or demonstrate that the non[-]moving party cannot establish an essential element of his case. *Id.* at 215 n. 5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall; Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 363-64 (Tenn. 2009). Accordingly, "[t]he moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Hannan*, 270 S.W.3d at 5). If the moving party does not carry its initial burden, the nonmoving party has no obligation to produce evidentiary materials in support of its position. *Id.* (citing *McCarley*, 960 S.W.2d at 588, *Byrd*, 847 S.W.2d at 215).

## IV. DISCUSSION

Contestants essentially assert that the caretakers poisoned their relationship with Decedent to the extent that Decedent changed his will. According to Contestants, the 2007 will was signed at a time when Decedent was in an emotionally distraught state shortly after his wife had died. They contend that the collective actions of the caretakers, upon whom Decedent had become dependant, resulted in Decedent completely rewriting his long-expressed estate plan. Contestants claim the terms of the 2007 will are unjust and unnatural when compared to Decedent's previous wills, as they went from being 100 percent

-6-

beneficiaries of a large estate to GCN receiving only a life estate in a farm.[5]

Contestants do not claim that Proponents had anything to do with Decedent revising his estate plan or that any of them exerted undue influence over Decedent. None of the accused caretakers was named a beneficiary pursuant to the will.

Contestants assert that the affidavits, interrogatory responses, and deposition testimony submitted demonstrate that Proponents have failed to negate an essential element of their claim of undue influence, or to show that Contestants cannot prove an essential element of their claim at trial. Therefore, they argue that the burden of production has not shifted to them. Contestants argue that even if the shift occurred, the record is replete with examples of genuine issues of material fact in dispute. Thus, Contestants submit that summary judgment was improperly granted.

A valid will is a product of the free exercise of independent judgment by a person who has the mental capacity to make a testamentary disposition. *In re Estate of Elam*, 738 S.W.2d 169, 171 (Tenn. 1987). As a general rule, it is presumed that undue influence does not enter into the making of a will, and the burden of proving undue influence falls on the person contesting the will. *Hammond v. Union Planters Nat'l Bank*, 222 S.W.2d 377, 383-84 (Tenn. 1949).

The trial court in this matter properly observed that proof of a confidential relationship is required to establish undue influence. The doctrine of undue influence is applicable only where there is a confidential relationship with the testator whereby one party is able to dominate and exercise undue influence over the testator. *In re Estate of Brevard*, 213 S.W.3d 298, 302 (Tenn. Ct. App. 2006) (citing *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 219 (Tenn. Ct. App. 1997); *Simmons v. Foster*, 622 S.W.2d 838, 840 (Tenn. Ct. App. 1981)). A confidential relationship is that relationship where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party. *Bills v. Lindsay*, 909 S.W.2d 434, 440 (Tenn. Ct. App. 1993). In general terms, it is any relationship that gives one person the ability to exercise dominion and control over another. *Kelley v. Johns*, 96 S.W.3d 189, 197 (Tenn. Ct. App. 2002). "The burden of proof regarding a confidential relationship rests upon the party claiming the existence of such a relationship."

---

[5]Interestingly, the record reveals that Decedent's 2000 will also gave GCN a life estate in the farm. Additionally, Decedent's 2004 will gave part of the estate to GCN and the remainder to Jimmy Norton. Proponents assert that giving GCN a life estate in the farm so he could continue to use it for his lifetime is not inconsistent with any statement by Decedent that GCN would be a beneficiary of his estate.

*Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002).[6]

Confidential relationships generally arise in two situations: (1) "legal relationships" and (2) "family and other relationships." *Estate of Brevard*, 213 S.W.3d at 302-03 (quoting *Matlock v. Simpson*, 902 S.W.2d 384, 385-86 (Tenn. 1995)). In the "legal relationships" context, a confidential relationship arises when there is some legal connection between the dominant party and the weaker party, such as when a dominant party is granted a power of attorney. This type of relationship is confidential per se. *Id.* "Family and other relationships" are not confidential per se - to establish a confidential relationship in this situation, contestants must prove the elements of "domination and control" in order to establish that the free will of the weaker party has been destroyed and the will of the dominant party has been substituted. *Matlock*, 902 S.W.2d at 385-86. To establish undue influence, in addition to proving that a confidential relationship exists, contestants must prove that through the confidential relationship, suspicious circumstances exist suggesting the will did not occur as a result of the testator's free and independent actions. *Estate of Hamilton v. Morris*, 67 S.W.3d 786, 792 (Tenn. Ct. App. 2001).

Undue influence is rarely proven by direct evidence, and Contestants concede that they have no direct evidence that the caretakers exercised any undue influence over Decedent with respect to the will. Without direct evidence, a person contesting a will must prove the existence of more than one suspicious circumstances warranting a conclusion that the testator's will does not represent the testator's free and independent act. *Halle v. Summerfield*, 287 S.W.2d 57, 61 (Tenn. 1956); *Kelley*, 96 S.W.3d at 195; *Estate of* Hamilton, 67 S.W.3d at 792; *Fell v. Rambo*, 36 S.W.3d 837, 847 (Tenn. Ct. App. 2000). The suspicious circumstances often relied upon to establish undue influence are: (1) the existence of a confidential relationship between the testator and the beneficiary; (2) the testator's physical or mental deterioration; and (3) the beneficiary's active involvement in procuring the will. *Elam*, 738 S.W.2d at 173. Other recognized suspicious circumstances include: (1) secrecy concerning the will's existence; (2) the unjust or unnatural nature of the will's terms; (3) the testator being in an emotionally distraught state; and, (4) discrepancies between the will and the testator's expressed intentions. *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989). Generally, there is no prescribed type or number of suspicious circumstances that must be found to invalidate a will.

The confidential relationship does not need to involve a beneficiary, however, as undue influence may be exercised by one other than a beneficiary. *DeLapp v. Pratt*, 152

---

[6]In *Estate of Brevard*, 213 S.W.3d at 302 n. 5, we addressed the contention that a presumption of undue influence can arise even in the absence of a confidential relationship. We observed that the greater weight of authority requires a confidential relationship.

S.W.3d 530, 542 (Tenn. Ct. App. 2004); *Estate of Glasgow v. Whittum*, 106 S.W.3d 25, 31 (Tenn. Ct. App. 2002). "Confidential relationships can assume a variety of forms, and thus the courts have been hesitant to define precisely what a confidential relationship is." *Kelley*, 96 S.W.3d at 197 (citing *Robinson v. Robinson*, 517 S.W.2d 202, 206 (Tenn. Ct. App. 1974)). We have noted that a "fiduciary relation may be any kind which implies confidence, as trustee and beneficiary, attorney and client, parent and child, guardian and ward, physician and patient, nurse and invalid, confidential friend and adviser, indeed, any relation of confidence between persons which gives one dominion or influence over the other." *Roberts v. Chase*, 166 S.W.2d 641, 650 (Tenn. Ct. App. 1942). As we noted in *Estate of Glasgow*:

> It is immaterial whether undue influence is exercised directly or indirectly. In determining whether undue influence is present, a central focus is on the means used and the effect upon the donor. The underlying theory of the doctrine is that the donor is induced by various means to execute an instrument that, in reality, is the will of another substituted for that of the donor. We specifically reject the contention that a beneficiary must be the one who exerts the undue influence.

*Estate of Glasgow*, 106 S.W.3d at 31.

Upon review of the record before us, we find that the affidavits, interrogatory responses, and depositions relied upon by Contestants are not sufficient to establish the existence of a confidential relationship between the caretakers and Decedent at the time he executed his will. By Contestants' own admissions, the Decedent was independent-minded and a competent businessman, not subject to influence by anyone in his business or personal decisions. Contestants' admissions are confirmed by Decedent's long-time business associates.

As established by Proponents, Decedent availed himself of independent professional advice and counsel in the preparation of his will. Prior to, at the time of, and following the execution of his will in December 2007, the Decedent had the benefit of independent counsel and advice from no less than five unrelated, objective professionals. None of Decedent's caretakers was present at the meetings at which Decedent and his professional advisors discussed the changes Decedent wished to make to his estate plan. An independent attorney drafted Decedent's will and assisted him in executing it. All of Decedent's professional advisors were competent and well-respected in the community; none of them was in any way associated with any of Decedent's caretakers or with any of the beneficiaries of Decedent's will. Based upon the proof that the Decedent was an independent-minded person, not subject to influence by outsiders, and given the fact he met on a number of occasions with independent professionals, even if Contestants could establish the existence of a confidential

relationship, the testator's receipt of independent advice would rebut the inference or presumption of undue influence that arises upon the proof of a confidential relationship. *See, e.g., Richmond v. Christian*, 555 S.W..2d 105, 107-08 (Tenn. 1977).

Because Proponents have negated Contestants' claim that there was a confidential relationship between the Decedent and any other person, Contestants' undue influence claim must fail. Consideration of other alleged suspicious circumstances is unnecessary. We therefore uphold the trial court's grant of summary judgment in favor of Proponents.

## V. CONCLUSION

The judgment of the trial court is affirmed and this case is remanded. The costs on appeal are assessed against the appellants, George C. Norton and Teresa R. Norton.

_____
JOHN W. McCLARTY, JUDGE